257 P.2d 56]

[Civ. No. 19320.   Second Dist., Div. One.   May 20, 1953.]

ERNEST B. HORWATH et al., Appellants, v. ROOSEVELT HOTEL COMPANY (a Corporation), Respondent.

(1)

Herbert Gall and Edward Fitzpatrick for Appellants.

George R. Maury for Respondent.

DRAPEAU, J.—Plaintiffs are certified public accountants and operate nationally as a copartnership. Mr. Loyd S. Pettegrew heads the firm in Los Angeles. In November of 1944,

Mr. Pettegrew and Mr. Thomas E. Hull, president of defendant hotel company, had some consultations concerning an assessment proposed to be levied against defendant by the Bureau of Internal Revenue for additional income and excess profit taxes for the years 1940, 1941, 1942 and 1943.

As a result, plaintiffs were orally employed to resist the proposed assessment. A protest was prepared, and plaintiffs appeared and presented it to the conference section of the Bureau of Internal Revenue. A ruling adverse to defendant followed.

Thereafter, in the spring of 1946, a hearing on the same matter was had before the technical staff of the Internal Revenue Service. This likewise resulted in an adverse ruling.

In December of 1946, Mr. Pettegrew, who had conducted both of these hearings, suggested to Mr. Hull that a petition should be filed with the tax court of the United States; and that this would require the services of an attorney, since plaintiffs ''didn't appear in court actions.'' Accordingly, the law firm of Latham and Watkins of Los Angeles was engaged to represent defendant before the tax court. Final adjudication by that court in favor of defendant was entered on December 9, 1949.

On December 31, 1946, defendant received from plaintiffs a bill for $1,166.86 which was paid. In April of 1950, Mr. Pettegrew made oral demand on Mr. Hull for payment of fees for handling the tax case, and on April 21, 1950, he rendered a statement for $15,000. Defendant denied liability.

Thereafter on June 29, 1950, this action was commenced. The first cause of action alleged in the complaint was an account stated for $15,000. The second cause of action was based on an oral agreement for professional services in connection with the proposed assessment, payment to be made ''when there was final adjudication of the matter,'' which was alleged to be March 9, 1950. The third cause of action was on a common count for indebtedness incurred ''within two years last past'' at the request of defendant.

By its answer defendant denied the indebtedness and set up the statute of limitations as an affirmative defense.

The trial court found in favor of defendant company, to wit: As to the first cause of action, there was no account stated between the parties in excess of $1,166.86, which was found due and paid early in 1947.

As to the second cause of action, it was found (I) that on or about March 1, 1945, the parties entered into an oral

agreement whereby appellants were to render professional services "in connection with a proposed assessment by the United States Bureau of Internal Revenue"; (II) that payment for such services and for necessary costs and travel expenses would become due when proceedings before the Bureau of Internal Revenue were determined and decided by the bureau; and that said proceedings were determined and decision made in December, 1946, whereupon appellants rendered their bill for services, necessary costs and traveling expenses for $1,166.86, which were paid.

On the *quantum meruit* count, the court found that "the last services ever performed by the plaintiffs for the defendant were performed not later than May 3, 1948" which was more than two years prior to the filing of the complaint.

The court also found that all three causes of action were barred by the provisions of section 339, Code of Civil Procedure.

Plaintiffs appeal from the judgment which followed, and also from the order retaxing costs and from the order denying their motion for new trial.

It is here urged that the evidence is insufficient to support the judgment, particularly with respect to finding II of the second cause of action heretofore recited. This for the reason that it was agreed that payment would be made upon *final adjudication* of the case and was not limited to services before the Bureau of Internal Revenue.

From the very beginning, appellants believed that respondent would not be compelled to pay the proposed assessment. The arrangement for payment of fees was made orally, and the record discloses three separate versions of the conversation which took place when the fees were discussed:

(1) Mr. Pettegrew testified that this conversation took place between him and Mr. Hull, in the presence of Mr. Hal Farrar, secretary for respondent hotel company, in December, 1944, or January, 1945, to wit:

"Mr. Hull asked me how we were making out on the case, particularly how Haber was doing. I said, 'I talked to him in New York yesterday afternoon, and they are quite enthusiastic about their prospects. We really believe you can forget about paying this proposed assessment.' . . . He said, 'That's fine. . . . By the way, how much is this going to cost?' . . . I said, 'Well, you will have to pay Haber's traveling expenses out here and back. I can't tell you how much it is going to cost, because we have no knowledge at this time

as to how much time is going to be involved, how much work we are required to do.' . . . Mr. Hull said, 'Well, can we make a deal on a contingent basis?' . . . I said, 'Well, when accepting a contingent fee we are required to file the full details of it with the Bureau of Internal Revenue. . . . Furthermore, this case may involve a million dollars all told. Now,' I said, 'a 25 per cent contingent fee, that would be $125,000, Tom.'

"So he said, 'Well, let's forget that.' So I said, 'Suppose we go ahead and do the work, let the question of fee go until we find out how much time we are required to put in on it, and what the final outcome of the matter is.' . . . Mr. Hull said, 'That's agreeable to me. Let's do it that way.' "

(2) Mr. Farrar testified that when the final fee arrangement was discussed by Mr. Hull and Mr. Pettegrew and himself, it was agreed that "If the undertaking was successful, we were to pay $10,000. If unsuccessful, we were to pay some nominal fee, which I believe was based on expenses and time involved."

(3) With respect to the same conversation, Mr. Hull testified that "Mr. Pettegrew said, 'We will take this for $10,000.00, if Horwath & Horwath win this case.' He said, 'But, in the event we don't,' he said, 'we will ask for some expense money and some time.' I said, 'What, about?'

" 'Oh,' he said, '$1,000.00 and expenses, or something like that.' "

On cross-examination, Mr. Hull testified:

"The deal was this: If Horwath & Horwath won the case, we were to pay them $10,000.00. If they lost the case, we were to pay them a reasonable expense account.

"Q. You said a while ago that you were to pay them a reasonable expense account, plus $1,000.00, isn't that right? A. There was $1,000.00 mentioned, and expenses, for which we got a bill of $1,166.00 which we paid."

Neither the bill nor the check in payment was produced. Mr. Pettigrew testified that he thought the bill specified $186 for traveling expenses and $1,000 retainer fee, but that this was erroneous because it was for costs and traveling expenses and not for services. He explained that Mr. Haber, the income tax specialist attached to appellants' New York office, made two plane trips from New York at a cost of $400 per round trip, or $800; that he remained in Los Angeles seven days the first trip and four days the second time, and that the $1,166 was for reimbursement of these expenses incurred by Mr. Haber.

■ "It is the general rule that on appeal an appellate court will (a) view the evidence in the light most favorable to the respondent, (b) not weigh the evidence, (c) indulge all intendments which favor sustaining the finding of the trier of fact, and (d) not disturb the finding of the trier of fact if there is substantial evidence in the record in support thereof." *Kling* v. *Crown Finance Corp.*, 63 Cal.App.2d 33, 36 [146 P.2d 54].

■ Where witnesses differ, under our system, the decision of the trier of fact is final. *Lovelady* v. *Sacramento City Lines*, 102 Cal.App.2d 28, 29 [226 P.2d 722].

■ Under Mr. Hull's version, if appellants did not win the tax case, they were to get $1,000 and expenses.

Mr. Pettegrew testified that the fee was to depend upon the amount of work required in the case and the final outcome. Also, that when the agreement was made, a hearing before the tax court was not contemplated. He admitted that appellants were not licensed to practice before that court. Therefore, "final outcome" could only refer to the proceedings before the Bureau of Internal Revenue where the case was lost.

When asked, ".Do you consider that you won the case or your firm won it?" Mr. Pettegrew replied, "I don't consider that we won or lost the case. We carried it up to a point."

The evidence amply supports the judgment and the finding complained of.

■ Appellants next assert that there was no cessation of work by them after December, 1946, and that respondent has never contended that it paid for that portion of the services.

In this connection, Mr. Latham testified that his firm charged a fee of $9,500 for handling the case before the tax court; that appellants rendered assistance in preparation and trial, to wit: "Well, when we drew the petition, we had before us their prior protests. Then, when the case came on for trial . . . they produced certain information, figures, for us. I believe they prepared, at our request, what is called a flow sheet, indicating usage in the hotel. And Mr. Pettegrew was one of our witnesses. . . . I think from time to time during the preparation, we consulted them—I am sure we did with Mr. Pettegrew on various matters involved. We did prepare the petition. We tried the case and wrote the briefs."

Mr. Pettegrew testified that appellants' testimony before the tax court was concluded on May 3, 1948, after which no further work was done by any member of the partnership.

Under the trial court's construction of the oral agreement, any assistance rendered by appellants in the tax court was not within the contemplation of the parties at the time the agreement was made and consequently was not included within its terms.

The third cause of action was one for alleged professional services rendered within two years preceding June 29, 1950, the date when the instant action was filed. Appellants admitted, and the court found, that no services were rendered after May 3, 1948, when Mr. Pettegrew testified before the tax court. As a result, no recovery may be had under this cause of action.

The answer affirmatively alleged, and the court found, that all three causes of action were barred by the statute of limitations, to wit: section 339, Code of Civil Procedure, because not brought within two years.

Appellants here urge that the finding is erroneous because the statute was improperly pleaded, i. e., without citing the particular subdivision of section 339 relied upon, as required by section 458, Code of Civil Procedure.

"It is now the settled law in California that where the particular code section pleaded as a bar to the action, contains two or more subdivisions, the answer must plead the subdivision number as well as the section number to present the defense of the statute of limitations; that an answer that merely pleads such section number without also pleading the proper subdivision number does not present the defense that the action is barred by the statute of limitations. (*Overton* v. *White*, 18 Cal.App.2d 567 [64 P.2d 758, 65 P.2d 99].)" *Hart* v. *Slayman*, 30 Cal.App.2d 556, 558 [86 P.2d 861].

In *Davenport* v. *Stratton*, 24 Cal.2d 232, 248 [149 P.2d 4], upon the authority of *Churchill* v. *Woodworth*, 148 Cal. 669 [84 P. 155, 113 Am.St.Rep. 324], as approved in *Universal Sales Corp.* v. *California Press Mfg. Co.*, 20 Cal.2d 751, 753 [128 P.2d 665], the strictness of the statutory requirement is thus limited:

"The rule as to the proper plea of the statute of limitations is not self-operating but depends for its enforcement on the diligence of the plaintiff in objecting to the insufficiency of the plea either by demurrer to the answer or by timely objection at the trial."

Here, no demurrer was interposed to the answer and the insufficiency of the pleading was not raised until after the

close of testimony, to wit: in the final argument of counsel just prior to submission of the cause for decision on September 28, 1951.

Respondent's request for leave to amend answer dated September 28th was filed on October 23, 1951. This was never disposed of.

The trial judge filed a memorandum opinion on April 1, 1952, and judgment was entered on April 17, 1952. Thereafter, on appellants' motion for new trial, the insufficiency of the pleading was made the basis of the ground "The decision is against law." That motion was denied.

The statute of limitations was an issue in the case, and the trial court found that all three causes of action were barred by it. In the circumstances, appellants' objection was not timely. Made after the case was closed, it came too late to raise the sufficiency of the pleading and thereby cure appellants' waiver thereto. As a result, no ruling on respondent's request to amend was required.

Appellants moved the trial court to strike from respondent's memorandum of costs item 2 for $50 for extra court reporter's fee for two days, on the ground it was not legally chargeable to costs. The motion was granted as to $10 of the item, and costs were retaxed in the sum of $403.94. Appellants claim this as error and urge that the entire charge of $50 should have been struck from the memorandum.

On the authority of *Corona Foothill L. Co.* v. *Lillibridge,* 12 Cal.App. 2d 549 [55 P.2d 1012], which was cited by appellants, respondent agrees that $40 more should have been struck from the cost bill, making the total sum of $363.94 allowable in the trial court.

For the reasons stated, the order retaxing costs and the judgment are, and each of them is, modified by taxing costs in the sum of $363.94 instead of $403.94. As so modified, the order retaxing costs and the judgment are affirmed, appellants to bear the costs of appeal. The appeal from the order denying a new trial is dismissed.

White, P. J., and Doran, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 15, 1953.