[Civ. No. 6511. Fourth Dist. Apr. 11, 1961.]

ROBERT KONJOYAN, Respondent, v. ARAM G. DER ZAKARIAN, Appellant.

Peckinpah & Hamlin and Charles F. Hamlin for Appellant.

Marvin E. Helon and Dudsick & Helon for Respondent.

SHEPARD, J.—This is an appeal by defendant from a judgment for plaintiff in the amount of $6,125, for services rendered.

Viewing the evidence, as we must, in the light most favorable to the judgment (*Smith* v. *Bull,* 50 Cal.2d 294, 306 [11] [325 P.2d 463]), the facts in general substance, as shown by the record before us, are as follows: Defendant was a trader in market commodities, primarily in soy beans. He not only handled his own investments in the market but also investments for a considerable number of other people. In June 1955, plaintiff became acquainted with defendant, and invested $2,500 in the commodity market through defendant. In the following months the acquaintance ripened. About September 1, 1955, plaintiff started coming regularly to defendant's office, charting market quotations for defendant, answering the telephone, picking up money from clients and taking it to brokerage houses, introducing prospective investors to defendant, explaining transactions to investors, running miscellaneous errands, and otherwise handling miscellaneous details so as to give defendant more free time to study and calculate market movements. On one occasion plaintiff went with defendant on a business trip to Chicago, where defendant introduced plaintiff to others as being associated with defendant. During the time spent at Chicago, a similar routine was followed, plaintiff assisting in answering the telephone, transmitting orders to brokers, recording market quotations, and introducing defendant to some of plaintiff's friends who thus became investors through defendant.

Plaintiff himself sometimes invested further money through defendant. On at least two occasions plaintiff and defendant invested on a joint-venture basis or partnership basis in special pools. There were some losses and some profits on plaintiff's investments, but the net result appears to have been on the profit side.

In the fall of 1955 and the spring of 1956, plaintiff borrowed a total of $5,800 from defendant, of which $5,000 was later repaid on defendant's demand. The evidence is in dispute as to whether or not the $5,800 was a loan or an advance on an undetermined compensation to be ultimately paid in the future. During some of this time defendant made large

profits from the business and had serious worries over income tax adjustments. One profit figure for a limited period was mentioned in the sum of $500,000. At times for short periods plaintiff was in sole charge of the office, but made no independent market investments for defendant's clients.

Both plaintiff and defendant testified that defendant told plaintiff that for the work plaintiff was doing defendant would make it worth plaintiff's while. At various times the subject of compensation arose, and different suggestions were made. Defendant at one time suggested putting $25,000 in plaintiff's name in the market, letting plaintiff take the profit. This was never done. At another time defendant suggested a fixed percentage of the total profits. But this likewise never crystallized into action and exact details were never pinned down. At one time a discussion was had with defendant's Chicago attorney, in which defendant asked the attorney to work out a method by which he could properly compensate plaintiff. Defendant stated he would never pay a salary. Each time plaintiff brought up the subject of compensation, defendant made some new suggestion of a form of ultimate payment, but would never crystallize the suggestion into exact form. Plaintiff's employment continued until about the first week of November 1957, when a disagreement terminated the relationship.

Most of the conflict in evidence occurs on the subject of whether or not defendant ever agreed to compensate plaintiff in any other way than by assisting plaintiff to profit by market investments. Some minor conflicts also appear in the evidence on details of plaintiff's work and, as above noted, on whether or not some of the money paid by defendant to plaintiff was a "loan" or an "advance" on ultimate compensation. The evidence is clear and uncontradicted that defendant would not agree to pay fixed wages on a weekly, monthly or time basis.

The trial court found that defendant did employ plaintiff and agreed to pay him at the termination of his work the reasonable value thereof; that the work was performed from September 1, 1955, to October 31, 1957; that demand for payment was made by plaintiff and defendant refused payment; that the reasonable value of the work done by plaintiff for defendant is in the sum of $6,125; that it is not true that plaintiff elected to do the work without compensation; that it is not true that plaintiff performed no work other than at defendant's place of business; and that it is not true that

the cause of action did not accrue within two years of the date of commencement of the action. Judgment being rendered for plaintiff and motion for new trial denied, defendant appeals.

### TERMINAL COMPENSATION

Defendant first contends that the evidence shows conclusively that defendant satisfied his only legal obligation to plaintiff, and cites *Roche* v. *Baldwin*, 135 Cal. 522 [65 P. 459, 67 P. 903]. With this contention we cannot agree. Plaintiff testified that he sought on several occasions an understanding with defendant of what plaintiff would ultimately be paid; that on each occasion the reply implied a final payment of reasonable value in some form, but that defendant would not pay wages on a monthly or time basis in the ordinary sense. The ruling of *Roche* v. *Baldwin, supra,* that plaintiff should have counted on the agreement as alleged in defendant's answer and as proven at the trial, was disapproved in the later case of *Roche* v. *Baldwin,* 143 Cal. 186, 193 [76 P. 956], where the court said:

"The plaintiff based his complaint upon his own theory of the facts, and the trial court has found that his theory is correct, and that the defendant's theory of the facts is wrong, and thus the facts have been settled, and are not to be further questioned." See also *Brooks* v. *Van Winkle,* 161 Cal.App.2d 734, 739 [1] [327 P.2d 151].

We are satisfied that the evidence was amply susceptible of the interpretation placed thereon by the trial court, and amply sufficient to support the trial court's conclusion. (*Lazzarevich* v. *Lazzarevich,* 88 Cal.App.2d 708, 721 [11] [200 P.2d 49]; *Johns* v. *Coleman,* 176 Cal.App.2d 778, 783 [3] [1 Cal.Rptr. 784].)

### STATUTE OF LIMITATIONS

Defendant next claims that plaintiff's action is barred by the statute of limitations (Code Civ. Proc., § 339, subd. 1) because (he claims) the cause of action was on an oral contract and accrued more than two years prior to the filing of the action. It is, of course, true that the statute of limitations does commence to run on an oral contract for payment of money from the date the money was due. (*Ackley* v. *Fishbeck,* 124 Cal. 409, 410 [3] [57 P. 207]; *Horwath* v. *Roosevelt Hotel Co.,* 118 Cal.App.2d 1, 7 [5] [257 P.2d 56].) It is also true that when the services are to be paid for from month to month the statute commences to run at

the due date of each monthly salary, to wit: at the end of the month. (*Collier* v. *Landram,* 67 Cal.App.2d 752, 759 [11] [155 P.2d 652]; *Johnstone* v. *E & J Mfg. Co., Inc.,* 45 Cal.App.2d 586, 587 [1a], 588 [1b] [114 P.2d 658].)

However, as we have above noted, there was ample evidence from which the court was justified in concluding that the real intention of the parties was payment at termination of services. (*Robinson* v. *Chapman,* 98 Cal.App. 278, 280 [1] [276 P. 1081]; *Lazzarevich* v. *Lazzarevich, supra*; *Lloyd* v. *Kleefisch,* 48 Cal.App.2d 408, 412-413 [2] [120 P.2d 97].) The case of *Corato* v. *Estate of Corato,* 201 Cal. 155 [255 P. 825], cited by defendant, merely holds that there was no agreement as to time of payment and no custom, and that the agreement was to pay for services currently as they were rendered. (*Robinson* v. *Chapman, supra*; *O'Brien* v. *Fitzsimmons,* 183 Cal.App.2d 231, 234 [6 Cal.Rptr. 627].) *Laven* v. *Cowan,* 108 Cal.App. 628 [291 P. 877], involved nursing service in which the evidence indicated that the parties originally contemplated a payment from month to month. The statute of limitations was pleaded and the trial court failed to make any findings thereon (p. 632 [3]). Both the Corato and Laven cases are clearly distinguishable from the case at bar and are not controlling. We find no merit in defendant's contention.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.