112 F.3d 517
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
MONO PUMPS LIMITED, Plaintiff-Appellee,
v.
DISPOSABLE WASTE SYSTEMS, INC., Defendant-Appellant.
 No. 95-56793.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 3, 1997.
Decided April 23, 1997.
 
 Before: SCHROEDER, WIGGINS, LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Following final judgment against it on all claims, Disposable Waste Systems ("DWS") challenges several pretrial orders involving statute of limitations defenses to various claims against Mono Pumps Limited ("Mono"), and an order in limine precluding evidence on lost profits as part of the damages for DWS's tort claims. We have jurisdiction under 28 U.S.C. § 1291. We AFFIRM in part and REVERSE in part.
 
 
 3
 We review of summary adjudication de novo. Jesinger v. Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). We generally review evidentiary rulings for abuse of discretion, Masson v. New Yorker Magazine, Inc., 85 F.3d 1394, 1399 (9th Cir.1996), but because the court's in limine rulings turned on pure questions of state law and constitutional law, we review de novo. National Union Fire Ins. Co. v. Showa Shipping Co., 47 F.3d 316, 322 (9th Cir.1995); NCAA v. Miller, 10 F.3d 633, 637 (9th Cir.1993).
 
 I. Statute of Limitations
 
 4
 In this diversity case, we apply state statutes of limitations. Nevada Power Co. v. Monsanto Co., 955 F.2d 1304, 1306 (9th Cir.1992).
 
 
 5
 A. Contract Claims Arising From Method of Calculating Royalties
 
 
 6
 Under California law, the statute of limitations for periodic payments in a written contract does not run for each payment until the due date on that particular payment. Waggoner v. Dallaire, 649 F.2d 1362, 1368 (9th Cir.1981). Thus, the statute of limitations defense is inapplicable to DWS's contract claims for an accounting of royalties on sales after October 1984.
 
 
 7
 The district court held that the statute of limitations ran on DWS's improper royalty payment claims from the time DWS learned of Mono's accounting method of calculating the royalties: at the latest by March 1984 when it received Arthur Anderson's audit of Mono's royalty payment practices. It held that the allegedly improper calculation of multiple royalties payments constituted one continuing wrongdoing, reasoning that the practice of calculating royalties was a one-time trigger of the statute of limitations for all payments made under that method of calculations. Thus, it concluded that the four-year statute of limitations had expired before the counterclaim was made in July 1988. Cal.Civ.Proc.Code § 337.
 
 
 8
 We disagree. Although the district court may have articulated a reasonable rule, it is not a rule that appears to have support under California law. Waggoner, 649 F.2d at 1368 ("In California, the statute of limitations on a monthly payment provision of a written contract does not run until the due date of each monthly payment."); Konjoyan v. DerZakarian, 12 Cal.Rptr. 389, 391 (Cal.Ct.App.1961) ("[w]hen the services are to be paid for from month to month the statute [of limitations] commences to run at the due date of each monthly salary...."). DWS alleges that Mono failed to make multiple royalty payments according to the terms of their contract. A cause of action arose, and the statute of limitations ran, from the alleged failure to make each payment as required by the contract. That the alleged breaches all had the same cause--use of an allegedly improper formula to calculate royalties--does not change the conclusion that the alleged failure to make proper royalty payments constituted an alleged breach of the contract for each quarter that royalty payments were due. We reverse the summary adjudication of DWS's contract claims arising from royalty payments made after October 1984.
 
 B. Fraud Claims
 
 9
 We hold that the district court did not err in granting summary adjudication on the fraud claims relating to Mono's manufacturing and to the scope of its initial marketing pursuant to the three-year statute of limitations in Cal.Code Civ.Proc. § 338. Under California law, "the statute of limitations commences to run after one has knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry." Bedolla v. Logan & Frazer, 125 Cal.Rptr. 59, 68 (Cal.Ct.App.1975); see also Garter-Bare Co. v. Munsingwear Inc., 723 F.2d 707, 711 (9th Cir.1984).
 
 
 10
 Even considering the declaration of DWS president Joseph Chambers, no reasonable factfinder could find that DWS's first inquiry notice of these fraud claims was after March 1984. DWS was aware in 1982 of the facts underlying the alleged contract breach relating to the manufacturing process. Although DWS claimed that it did not know at that time that Mono had no intention of fulfilling its manufacturing obligation under the License Agreement, it certainly was on inquiry notice about Mono's manufacturing practices. Knowledge of facts showing a breach of contract generally may not be sufficient to trigger the statute of limitations for a related fraud claim. Garter-Bare, 723 F.2d at 713 ("We have grave difficulty with this assumption that notice of contract breach ... constitutes, at law, notice of any fraud perpetrated by the defendant."). In this case, however, DWS points to the nonperformance of Mono's manufacturing obligation as the proof for its fraud in the inducement allegation; therefore, knowledge of Mono's allegedly improper practices in 1982 is also knowledge of the fact underlying the fraud claim. In contrast, a key fact underlying the fraud claim in Garter-Bare was not discovered until several years after the facts underlying the claim for breach of contract. See Garter-Bare, 723 F.2d at 712.
 
 
 11
 Moreover, DWS's contention that it had insufficient international experience to judge Mono's marketing is irrelevant. The test in California is whether DWS had knowledge of the underlying facts about Mono's marketing efforts--which it had following Chambers's visit to Mono in 1982, the Arthur Anderson audit of Mono, and the letter from Mono confirming it had no current intention to do anything in South America or Australia.
 
 
 12
 As for DWS's fraud claim relating to Mono's method of calculating royalty payments, DWS had notice of Mono's method of calculation for royalties before October 1984. Unlike the contract claims, we are not bound by Waggoner in determining whether the statute of limitations had expired. We find persuasive Mono's analogy to Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp., 407 F.2d 288, 292-93 (9th Cir.1969), and we therefore hold that the statute of limitations had run on the fraud claim relating to the royalties payments as well.
 
 
 13
 Thus, we affirm the district court's summary adjudication of the fraud claims.
 
 
 14
 C. California Civil Procedure Code section 351
 
 
 15
 DWS claims that Cal.Code Civ.Proc. § 351 tolled the running of the statute of limitations periods on all its claims. The limitations periods were not so tolled because section 351 is unconstitutional.
 
 
 16
 Section 351 states that the time limitation to bring an action against a person does not include the time that the defendant is absent from the state. We have held that section 351 is unconstitutional because it "forces a nonresident individual engaged in interstate commerce to choose between being present in California for several years or forfeiture of the limitations defense, remaining subject to suit in perpetuity." Abramson v. Brownstein, 897 F.2d 389, 392 (9th Cir.1990). This burden outweighs the state's articulated interest in "alleviat[ing] any hardship that would result by compelling [a] plaintiff to pursue [a] defendant out of state." Id. at 393.
 
 
 17
 Contrary to DWS's contention, the balancing is no different because Mono is from another country. DWS has not shown that the "significant" burden on defendants identified in Abramson, id. at 392, is outweighed by its burden of pursuing a lawsuit against Mono. Mono produced evidence that it was amenable to suit because of repeated visits of its corporate officers not just to California, but to DWS itself, and also under the provisions of the Hague Convention. See Fed.R.Civ.P. 4(f) and note (reprinting Hague Convention). Indeed, DWS had previously filed a complaint in federal court in California against Mono relating to the same issues.
 
 
 18
 Furthermore, DWS cannot rely on alleged problems enforcing a default judgment in England as reason to apply section 351 to defendants from other nations. Section 351 at most tolls the time to bring a suit--it does not address enforcement of a default judgment against an aloof foreign defendant who remains outside the reach of the Full Faith and Credit Clause. As recognized by the California Supreme Court, section 351 is directed at a narrower issue: allowing a plaintiff "effectively to commence an action within the limitations period." Dew v. Appleberry, 591 P.2d 509, 513 (Cal.1979) (emphasis added). Abramson itself focuses on amenability to service of process, not the ease of enforcement of a default judgment. See also Bendix Autolite Corp. v. Midwesco Enters., Inc., 486 U.S. 888, 894 (1988) (finding that a similar Ohio statute unconstitutional). Thus, section 351 provides DWS no relief.
 
 
 19
 II. Exclusion of Claim for Lost Profits as Damages for Fraud
 
 
 20
 Because DWS's fraud claims were barred by the statute of limitations, we find moot DWS's contention that the district court erred in granting Mono's motion in limine to preclude DWS from presenting evidence regarding damages from lost profits on its tort claims.
 
 CONCLUSION
 
 21
 The judgment of the district court is AFFIRMED-IN-PART, REVERSED-IN-PART, and REMANDED. No costs allowed.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3