**William WAGGONER, et al.,**
**Plaintiffs-Appellant,**

v.

**Robert Lee DALLAIRE,**
**Defendant-Appellee.**

No. CA 79–3542.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 1980.

Decided July 10, 1981.

Rehearing Denied Sept. 4, 1981.

1364

Wayne Jett, Los Angeles, Cal., for plaintiffs-appellants.

James D. Ream, Wright, Jenkins & Ream, Atascadero, Cal., for defendant-appellee.

Before KENNEDY and TANG, Circuit Judges, and SPEARS,* District Judge.

TANG, Circuit Judge:

Trustees of four employee benefit trusts appeal a district court judgment. The trustees brought the action to collect delinquent fringe benefit contributions allegedly required by a collective bargaining agreement between a union and the appellee, the President of A-Jay Excavating Company. The district court held the collective bargaining agreement to be unenforceable under federal and California law. We reverse.

* Honorable Adrian A. Spears, Senior United States District Judge for the Western District of Texas, sitting by designation.

## I. *Facts*

On March 5, 1969, Robert Lee Dallaire ("Dallaire"), President of the A-Jay Excavating Company ("A-Jay"), signed a "short form" collective bargaining agreement with the International Union of Operating Engineers Local Union No. 12 ("Local 12"). The agreement incorporated by reference the terms of the "Master Labor Agreement" ("MLA"), an agreement between Local 12 and the Southern California General Contractors Associations. The MLA establishes four employee benefit trusts and requires employers to contribute to the trusts according to a specified formula for "hours worked by (or paid) each employee under this agreement." MLA arts. VIII, IX & X.

On May 6, 1977, the trustees of the MLA trusts ("the Trustees") brought suit in federal district court against Dallaire pursuant to section 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a) (1976). The action sought recovery of alleged delinquent trust contributions, liquidated damages, attorneys' fees, and audit expenses. The allegedly delinquent contributions dated back to 1970, the last date A-Jay reported contributions to the trusts.

Dallaire testified at trial that he entered the collective bargaining agreement in 1969 only upon certain oral assurances made by Local 12 business agent, Leroy Fortsen. Dallaire testified that Fortsen had "wanted to protect himself with the union to keep him from getting in trouble and he wanted me to sign a contract ..." Dallaire also testified that Fortsen promised not to enforce the terms of the agreement if Dallaire signed the "short form" and agreed to adhere to the contract until he had finished the "Thibado job," a large construction project A-Jay was then undertaking. Dallaire further testified that Fortsen visited A-Jay construction projects about twenty times from 1969 to May, 1973, and saw that A-Jay was using non-union employees on the projects.

At the conclusion of the trial, the district court ruled that the collective bargaining agreement was null and void by reason of fraud in the inducement. The court also ruled that the agreement was void as an unenforceable adhesion contract. In addition, the court ruled that the Trustees' action was barred by the applicable four-year statute of limitations. The court reasoned that Local 12's business agent had observed A-Jay's construction projects, thereby giving the Trustees constructive notice of A-Jay's contractual breaches more than four years before the suit's filing. Judgment was entered in favor of Dallaire on August 9, 1979.

Almost nine months after trial, the Trustees moved to disqualify the district judge for "pervasive personal bias." The court denied the motion as untimely and unsubstantiated.

The Trustees appeal the judgment, the denial of the disqualification motion, and a subsequent award of attorney's fees to Dallaire. Several other issues are also raised by the parties on appeal.

## II. *Fraudulent Inducement*

Federal law governs parties' rights in actions brought under section 301 of the LMRA. *Textile Workers Union of America v. Lincoln Mills*, 353 U.S. 448, 456–57, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972 (1957); *Rehmar v. Smith*, 555 F.2d 1362, 1366 (9th Cir. 1976). A district court may incorporate forum contract law to inform federal principles affecting the respective rights of parties, but only where "it effectuates the policy that underlies federal labor legislation." *Seymour v. Hull & Moreland Engineering*, 605 F.2d 1105, 1109 (9th Cir. 1979).

Dallaire's position is that he entered into the collective bargaining agreement only upon the oral understanding that its trust benefit terms would not be enforced. The issue is whether federal law permits such an oral understanding under the circumstances of this case. To this end, it is appropriate to inquire into the similar question of whether federal law permits oral modifications of agreements already made.

Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5) (1976), permits employer contributions to employee welfare trust funds, but requires that "the detailed policy on which such payments are to be made" be "specified in a *written* agreement with the employer." (emphasis added). The statute as written does not specifically prohibit oral modifications of written trust agreements, but such a limitation may be inferred from the context of the rest of the parent section.

Section 302 of the LMRA, 29 U.S.C. § 186 (1976), was enacted in response to serious Congressional concern over union corruption and alleged "shake-down" and "kick-back" schemes involving union welfare funds. *See Turner v. Local Union No. 302, Int'l Brotherhood of Teamsters*, 604 F.2d 1219, 1227 (9th Cir. 1979); *Thurber v. Western Conference of Teamsters Pension Plan*, 542 F.2d 1106, 1108 (9th Cir. 1976) (per curiam). To eradicate the problem, Congress made it a criminal offense in section 302 for an employer to pay anything of value to a union representative or for a union representative to receive anything of value from an employer. 29 U.S.C. § 186(a)–(b)(1) (1976). An exception was made for employer contributions to employee trust funds, but the exception prescribes rigid safeguards to prevent fund misappropriation. Along with the requirement that the trust arrangement be detailed in a written agreement, section 302 requires pension payments to be included in separate trusts, annual audits of pension funds with disclosures of the audit results, and administration of the trust by a committee with both employer and employee representatives. 29 U.S.C. § 186(c)(5) (1976).

A rule permitting oral modification of written trust arrangements would defeat the elaborate protection section 302 provides trust beneficiaries. Employees, basing their futures on the promise of an old-age pension provided in a union contract, may discover in later years to their surprise that an oral side-agreement had eroded the worth of their pension rights. The rule may also tempt local union representatives and employers to enter corrupt bargains since no written record would exist delineating the employer's trust obligations.

Relying upon these considerations, the Third Circuit has held that an employer and a union may not orally modify the terms of employee trust provisions in a collective bargaining agreement. *See Lewis v. Seanor Coal Co.*, 382 F.2d 437, 441–44 (3d Cir. 1967) (employer urged that oral representations by union official estopped trust from claiming trust contributions), *cert. denied*, 390 U.S. 947, 88 S.Ct. 1035, 19 L.Ed.2d 1137 (1968). *Accord, Boyle v. North Atlantic Coal Corp.*, 331 F.Supp. 1107, 1108 (W.D.Pa. 1971) (oral understandings at variance with written agreements regarding trust contributions are of no legal effect). The Fourth Circuit reached the opposite result in *Lewis v. Lowry*, 295 F.2d 197, 199 (4th Cir. 1961), *cert. denied*, 368 U.S. 977, 82 S.Ct. 478, 7 L.Ed.2d 438 (1962). *Lowry*, however, wholly ignores the statutory framework provided in section 302, weakening the reasoning underlying the court's decision. *See generally, id.* at 201–02 (Sobeloff, C.J., dissenting).

■ Given section 302's language and the Congressional purpose underlying the section, the Third Circuit rule against oral modifications is better considered. We think this rule applies with equal force to the oral understanding at issue here. The interest of employees in certain benefits is unchanged. Opportunities for fraud may still exist, and the requirement of a writing will deter those. In short, every element leading the Third Circuit to its position is present here. Consequently, we feel that the LMRA prevents a local union agent and an employer from starting with an industry-wide plan as a base, orally departing from it in respects that contravene its essence, and then forming a final agreement, absent a formal writing to that effect. Under this standard, the district court erred in ruling that Dallaire's MLA trust obligation was qualified by Fortsen's oral promise.

## III. *Adhesion Contract*

The district court relied upon two factual findings to reach the legal conclusion that the collective bargaining agreement was an unenforceable adhesion contract: (1) the collective bargaining agreement was a "standardized mass produced agreement," and (2) Dallaire agreed to the agreement only because of the superior bargaining strength of Local 12.

■ The main principle underlying federal labor legislation is that collective bargaining is the best means of securing and maintaining industrial peace. The district court's holding is contrary to this principle. Under the district court's legal theory, almost all union contracts would be unenforceable since standardized contracts are commonplace in modern labor relations and all concessions won by unions from employers result from unions employing their bargaining strength on strategically chosen issues. Moreover, the court's finding that the union possessed superior bargaining strength is contrary to the rule in this circuit that parties to a collective bargaining agreement are conclusively presumed to have equal bargaining strength. *Rehmar v. Smith*, 555 F.2d at 1368–69.

■ Even under California state law, the district court's findings do not support the legal conclusion that the collective bargaining agreement is an unenforceable adhesion contract. California law requires a party to show more than simply that a standardized legal form was used and that the party had less bargaining strength than the other contracting party. A party wishing to avoid the contract must also show that the contract contained harsh or unconscionable terms that the party would not have agreed to but for his weak bargaining position. *See, e. g., Spence v. Omnibus Industries*, 44 Cal.App.3d 970, 974, 119 Cal.Rptr. 171, 173 (1975) (contract clause obligating buyer to arbitrate disputes; stipulated arbitration fees 14 to 50 times greater than the fees the buyer would have paid if dispute taken to court); *Hays v. Pacific Indemnity Group*, 8 Cal.App.3d 158, 86 Cal.Rptr. 815 (1970) (insurance contract clause purported to cover injury arising during installation of product, but in effect excluded coverage if defectively installed).

■ The district court did not find any term of the collective bargaining agreement harsh or unconscionable, nor does the record suggest that any contractual term would fall into this category. The trust provisions contained in the MLA do not appear particularly onerous and are widely followed in construction trade bargaining agreements. Nor is this a case where an onerous contractual provision was imposed by unfair surprise. Although Dallaire had no intention of observing the contracts he signed, he admits that he knew that the MLA and the "short form" agreement obligated him to make trust contributions. *Cf. Meyers v. Guarantee Savings & Loan Ass'n*, 79 Cal. App.3d 307, 312, 144 Cal.Rptr. 616, 619 (1978) (absent ambiguity, adhesion contracts are enforced according to their terms); *Yeng Sue Chow v. Levi Strauss & Co.*, 49 Cal.App.3d 315, 325, 122 Cal.Rptr. 816, 822 (1975) (same).

As a matter of law, the district court erred in concluding that the collective bargaining agreement was an unenforceable adhesion contract.

## IV. *Statute of Limitations*

■ Actions brought under section 301 of the LMRA are governed by the statute of limitations provided by the law of the forum state. *Int'l Union v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). The applicable statute of limitations in California is four years. Cal.Civ.Proc. Code § 337 (West 1977). The Trustees brought their action on May 6, 1977. The district court held that all claims for trust payments allegedly due from March 6, 1969—the date Dallaire signed the agreement—to May 6, 1977 were barred by the four year limitations period.

■ The district court clearly erred with respect to payments owed from May 6, 1973 to May 6, 1977. In California, the statute of limitations on a monthly payment provision of a written contract does not run until the due date of each monthly payment. *See Konjoyan v. DerZakarian*, 191 Cal. App.2d 110, 113–14, 12 Cal.Rptr. 389, 391 (1961); *Lee v. DeForest*, 22 Cal.App.2d 351, 360, 71 P.2d 285, 290 (1937); *People v. Magee*, 41 Cal.App. 727, 730–33, 183 P. 289, 290–91 (1919). As the MLA calls for monthly trust payments, the Trustees timely filed their action at least with respect to claims arising after May 6, 1973.

■ The claims arising prior to May 6, 1973, however, would be barred in the absence of circumstances warranting the tolling of the limitations period. If the communications between Dallaire and the Trustees are viewed in isolation, tolling appears warranted. According to the pretrial order, the Trustees knew two things prior to May 6, 1973: (1) Dallaire on March 5, 1969 had signed a "short form" collective bargaining agreement and four acknowledgements of trusts; and (2) Dallaire on July 6, 1970 reported to the Trustees that he was an inactive employer, and thereafter ceased to submit reports and trust contributions. Neither piece of information could have alerted the Trustees to the fact that Dallaire was continuing in business without making trust contributions. Moreover, Dallaire's 1970 report may have misled the Trustees as to the reason why Dallaire stopped reporting contributions. This misleading report alone would be sufficient to support a finding that the trustees were prevented from discovering the true facts, thus tolling the limitations period. *See Sears, Roebuck & Co. v. Blade*, 139 Cal. App.2d 580, 587, 294 P.2d 140, 144 (1956) (fraudulent concealment tolls the statute of limitations until plaintiff discovers, or should have discovered, the facts upon which its cause of action is based).

The district court rejected this theory on the ground that the Trustees had constructive knowledge of Dallaire's contractual violations prior to May 6, 1973. The court found that the Local 12 business agent, Fortsen, visited A-Jay construction sites from 1969 to 1973 and knew from these inspections that Dallaire was not complying with the terms of the collective bargaining agreement. The court constructively attributed this knowledge to the Trustees on the theory that Fortsen and Local 12 acted as the Trustees' agents.

■ The district court's conclusion hinges upon the legal finding that Local 12 and Fortsen acted as the Trustees' agents. This may have been a proper conclusion under California agency law; it is incorrect under federal law. As a matter of federal law, a union and its representatives are not agents of a trust fund created by a collective bargaining agreement. Trust authorities set up pursuant to section 302 of the LMRA have long been held to constitute a distinct and independent entity separate from the union that negotiates the collective bargaining agreement establishing a trust. *See Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 465–71, 80 S.Ct. 489, 493–496, 4 L.Ed.2d 442 (1960). These trust authorities by law have no authority to direct union activities, and unions are involved with the trust authorities only to the extent of selecting half of the trustees. Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). Moreover, all funds in trust must be used "for the sole and exclusive benefit of employees." *Id.* "Thus, the fund is no way an asset or property of the union." *Lewis v. Benedict Coal Corp.*, 361 U.S. at 465, 80 S.Ct. at 493.

■ In the absence of an agency relationship between Fortsen and the Trustees, the timeliness of the Trustees' action must be measured solely against what the Trustees actually knew and what they should have known. Under this standard, the district court erred in not tolling the statute of limitations to permit recovery of trust contributions owed prior to May 6, 1973.

## V. *Contract Termination*

■ Dallaire argues on appeal that the district court judgment can be affirmed on

the ground that the "short form" agreement terminated on July 1, 1969. Dallaire bases his contention on the theory that the "short form" agreement expired with the expiration of the MLA in effect prior to July 1, 1969.

The "short form" agreement was signed by Dallaire prior to July 1, 1969, and incorporated the MLA then in effect. The MLA was renegotiated in 1969, with the revision becoming effective for the period from July 1, 1969 to July 1, 1974. The "short form" provided that it would "continue in effect for the same term as the applicable multiple employer labor agreements and for any renewals or extensions thereof ..." The Ninth Circuit has recently ruled that the cited clause means that the short form agreements signed prior to July 1, 1969 expired when the 1969–1974 MLA went into effect on July 1, 1969. *Seymour v. Coughlin Co.*, 609 F.2d 346 (9th Cir. 1979).

Despite the apparent strength of Dallaire's argument, it is improper for this court to consider the issue. First, the issue was not presented or decided below, depriving this court of a thorough airing of the evidentiary and legal issues presented in the issue. Second, the issue was not among the issues included in the pretrial order. An issue must be included in the pretrial order to preserve the issue for argument at trial. Fed.R.Civ.P. 16. Rule 16 gives a trial judge authority to modify the order during the course of trial to prevent "manifest injustice." The rule does not, however, give the Court of Appeals similar authority. The Ninth Circuit has thus refused to consider issues on appeal that were not included in the pretrial order. *See, e. g., Seymour v. Coughlin Co.*, 609 F.2d at 348; *L & E Co. v. U.S.A. ex rel. Kaiser Gypsum Co., Inc.*, 351 F.2d 880, 882 (9th Cir. 1965).

Having failed to raise the issue below or have it included in the pretrial order, Dallaire is now precluded from raising the issue. Dallaire, however, may request modification of the pretrial order on remand.

## VI. *Damages*

■ Since the district court held the collective bargaining agreement null and void, it did not reach the damages issue. The district court, however, indicated that had it found for the Trustees, the Trustees would have been entitled to recover contributions only for the hours an employee worked in positions covered under the MLA. The Trustees contend that where an employee splits his worktime between a position covered by the MLA and position not covered, the employer must contribute for *all* the hours the employee works or is paid. The Trustees position reflects the settled Ninth Circuit rule. *See Waggoner v. C & D Pipeline Co.*, 601 F.2d 456, 459 (9th Cir. 1979) (employer required under MLA to make trust contributions for all hours worked by employee who split worktime between a "covered" operating engineer position and a "non-covered" superintendent's position). *Accord, Waggoner v. Wm. Radkovich Co., Inc.*, 620 F.2d 206 (9th Cir. 1980) (per curiam) (employee split worktime between a "covered" operating engineer's position and a "non-covered" superintendent's position); *Burke v. Lenihan*, 606 F.2d 840 (9th Cir. 1979) (employee split worktime between "covered" operating engineer position and "non-covered" laborer's position).

## VII. *Other Issues*

The Trustees raise several issues that require only cursory examination.

**A.** *Dallaire's Attempt to Terminate the Agreement.* Under the facts relating to the fraudulent inducement issue, the district court found "Defendant, in a timely manner and pursuant to the terms and conditions of his agreement with the Union, terminated the collective bargaining agreement in July, 1974." The Trustees argue that the finding is clearly erroneous.

We need not reach this issue. The fraudulent inducement issue turns on factors other than this finding. *See* Part II, *supra.* Indeed, the finding does not appear to bear directly on the fraudulent inducement issue or any other legal issue presented in the court's legal findings or the pretrial order.

■ **B.** *Liquidated Damages, Audit Expenses, and Attorney's Fees.* The Trus-

**1370**

tees urge that the district court erred in not awarding them liquidated damages, audit expenses and attorney's fees. As we hold that the liability aspect must be reconsidered, the parties may, on remand, pursue any contract damage claims. *See* MLA art. I.B.(18).

■ C. *Disqualification of the District Judge.* The Trustees argue that the district judge erred in not disqualifying himself from the case. On July 30, 1979, the Trustees moved pursuant to 28 U.S.C. § 144 (1976) to disqualify the judge for "pervasive personal bias." The motion was made almost nine months after trial and after a minute order had been entered awarding judgment to Dallaire. The district court denied the motion, *inter alia*, as untimely.

The district court's conclusion is correct. 28 U.S.C. § 144 (1976) requires disqualification motions to be submitted prior to ten days before trial, unless "good cause" is shown why the motion was not made within this time limit. A disqualification motion filed after trial and judgment is generally considered untimely. *See e. g., Taylor v. United States*, 179 F.2d 640, 642 (9th Cir. 1950). The Trustees fail to offer "good cause" to explain their delay in filing the motion. The Trustees based their motion upon statements made by the district judge during trial and during earlier cases. Thus, the Trustees did not need to wait until after judgment to make the motion.

We therefore affirm the district court's denial of the disqualification motion. Our ruling today, however, does not preclude a renewal of the motion for disqualification upon remand. Such a motion at that time would not be untimely and may be subject to consideration by the district court.

VIII. *Conclusion*

The district court denial of the Trustees' disqualification motion is affirmed. In all other respects, the district court judgment is reversed and remanded for further proceedings not inconsistent with this opinion.

AFFIRMED in part and REVERSED in part.