**OPERATING ENGINEERS PENSION TRUST, et al., Plaintiffs,**

v.

**George CUNDIFF, Jr., etc., Defendant.**

**No. CV 82–5103–FW.**

United States District Court,
C.D. California.

July 30, 1985.

Findings of Fact, Conclusions of Law
and Judgment Aug. 30, 1985.

Michael A. Urban, of Jett, Clifford & Laquer, Los Angeles, Cal., for plaintiffs.

George Cundiff, Jr., in pro. per., individually and doing business as George Cundiff Associates and G.C.A.

## MEMORANDUM OF DECISION

WHELAN, District Judge.

This matter came on for trial and, after the taking of evidence and submitting of additional points and authorities by counsel for plaintiffs, was submitted for decision. The Court has reviewed the evidence and the law pertinent thereto and is of the opinion that plaintiffs are entitled to decision and damages as follows: Plaintiffs are entitled to recover the sum of $43,915.61 in fringe benefit contributions or their equivalent for damages due to breach of contract. Plaintiffs are also entitled to recover the sum of 10 percent of the above-mentioned amount—to wit, $4,391.56—as liquidated damages pursuant to the collective bargaining agreement. They are also entitled to receive the cost of audit in the sum of $1,000. They are also entitled to receive reasonable attorneys' fees for the prosecution of this action in the sum prayed for by plaintiffs. They are also entitled to recover from defendant at the prejudgment interest rate fixed by law from the date that the unpaid contributions became due to date of judgment.

Defendant urged, as a defense, that he was entitled to withdraw from the short-form agreement between the parties which, by its terms, bound defendant to the terms of the master labor agreement. Defendant relies on the decision in *Seymour v. Coughlin*, 609 F.2d 346 (9th Cir.1979). However, the decision in such case has been distinguished and the Ninth Circuit has held that whether or not a contractor can withdraw from the agreement must be decided on a case-to-case basis. In the instant case, the circumstances are such that defendant cannot claim that he is not bound by the terms of the master agreement and his short-form agreement. Throughout the years in question in this case, defendant sought covered employees from the union hiring hall to work for him, and defendant made reports showing that he had employed covered employees and made contributions for some employees to the trust funds involved. What he owes to the trust funds are the contributions required to be made for other employees and other times during the period involved.

Plaintiffs' counsel are directed to prepare, serve, and lodge proposed findings, including the amount determinable under the contract for reasonable attorneys' fees and for prejudgment interest and submit a proposed form of judgment. Such findings and conclusions of law are to be prepared promptly and served in accordance with the Federal Rules of Civil Procedure.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The above-entitled cause came on regularly for trial before the Honorable Francis C. Whelan, United States District Judge presiding, sitting without a jury, on April 25, 26 and 27, 1984, and July 11, 1984. Michael A. Urban of the law offices of Jett, Clifford & Laquer appeared as counsel for plaintiffs, Operating Engineers Pension Trust, et al., and George Cundiff, Jr., appeared in propria persona as counsel for defendant George Cundiff, Jr., individually and doing business as George Cundiff Associates and G.C.A. The trial was conducted pursuant to the Pre-Trial Conference Order, the documentary and oral evidence presented at trial and the oral arguments by counsel. After the taking of evidence and the submission of additional points and authorities by counsel for plaintiffs, the case was submitted to the Court for decision. The Court now makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. The plaintiffs are the Operating Engineers Pension Trust, Operating Engi-

neers Health and Welfare Fund, Operating Engineers Vacation-Holiday Savings Trust and Operating Engineers Training Trust (hereinafter "Trusts").

2. The Trusts are express trusts established pursuant to written declarations and agreements of trust between the International Union of Operating Engineers, Local No. 12 (hereinafter "Local 12") and various multi-employer associations in the construction industry in Southern California and Southern Nevada.

3. Defendant George Cundiff, Jr., (hereinafter "Cundiff") is an individual doing business as George Cundiff Associates and G.C.A. with his principal place of business in Bakersfield, California, and is an employer engaged in interstate commerce within the meaning of Section 301(a) of the Labor Management Relations Act.

4. At all times relevant herein, Local 12 has been a labor organization representing employees in the building and construction industry in Southern California and Southern Nevada and a labor organization representing the employees of Cundiff in Southern California in a business affecting interstate commerce within the meaning of Section 301(a) of the Labor Management Relations Act of 1947 as amended [29 U.S.C. § 185(a)].

5. On December 9, 1975, Cundiff executed a short form collective bargaining agreement (hereinafter "Agreement") and signed written acknowledgements and acceptances of trust establishing the four Trusts (hereinafter "Trust Agreements"). By the terms of the Agreement, Cundiff became obligated to all of the terms and conditions (with some exceptions) of a written agreement known as the Master Labor Agreement between Local 12 and the Southern California General Contractors Associations (hereinafter "Master Agreement"). Defendant Cundiff has remained bound to the terms of the Master Agreement between Local 12 and the Southern California General Contractors Associations at all times since December 9, 1975, including the obligation to pay fringe benefit contributions to the Trusts for all hours worked by or paid to employees doing any work covered by the Master Agreement.

6. At all times since December 9, 1975, the Agreement, Master Agreement and Trust Agreements were in effect and binding upon Local 12 and Cundiff.

7. By the Master Agreement and Trust Agreements, and at all times material herein, defendant Cundiff was obligated to submit monthly reports to the Trusts on a timely basis showing the identity of his employees performing work covered by the Master Agreement and the number of hours worked by or paid to such employees. Further, Cundiff promised he would pay fringe benefit contributions to the Trusts on a monthly basis and at specified rates for each such hour worked or paid as to his employees covered by the Master Agreement. At all times material herein Cundiff was obligated to submit monthly reports and pay contributions to the Trusts at their place of business in Pasadena, California, on or before the tenth day of each successive month.

8. Each of the Master Agreements that Cundiff has been bound to since December 9, 1975, contain a provision regarding work by owner-operators. The 1980–83 Master Agreement provides as follows:

"The Owner-Operator who is not incorporated shall become a bona fide employee of the Contractor, as defined in this Agreement, upon reporting for work...."

(Art. XVI, Par. T, pp. 88–91).

9. The Master Agreement also requires that Cundiff subcontract work covered by the Master Agreement only to signatory subcontractors. Article I, B of the 1980–1983 Master Agreement provides as follows:

"The Contractor agrees that he or his Subcontractor shall employ one or more employees who are represented by the Union, on each jobsite on which he or any Subcontractor on the jobsite on which he or any Subcontractor on the jobsite is performing work of the type covered by this Agreement, as defined in Article I

and the classifications contained in Appendix "A", and that neither the Contractor nor any Subcontractor on the jobsite will subcontract any work to be done at the site of construction, alteration, painting or repair of a building, structure or other work except to a person, firm or corporation, party to a current labor agreement with the Union, or the basic crafts, namely, the Carpenters, Laborers, Cement Masons, and Teamsters who are also party to an agreement covering the particular work generally recognized as the jurisdiction as defined by the Building and Construction Trades Department.

10. On July 26, 1972, the Joint Labor-Management Adjustment Board met and made the following interpretation of the Master Agreement:

"[W]hen an employee has been dispatched by the Union to a Contractor and the employee performs any work whatsoever covered by the Agreement, the Contractor shall be obligated to pay fringe benefit contributions to the Trusts at the rate required for each and every hour worked by the employee or paid for by the Contractor. Further, that in the event the payroll records of the Contractor show that such an employee is paid a salary or any method other than hourly wages, then the employee shall be presumed to have worked a minimum of forty (40) hours during each week of such employment and payment, and fringe benefit contributions shall be paid for such hours.

11. Pursuant to the terms of the Master Agreement, the plaintiffs, by their duly authorized representative, conducted an audit of the payroll and related records of Cundiff on March 30, 1983, for the time period of January 1, 1978, through January, 1982. For the period covered by the audit, Cundiff hired employees, owner-operators and subcontractors to perform work covered by the Master Agreement without paying fringe benefit contributions for all hours worked by or paid to these individuals. For said period of time Cundiff has failed to pay plaintiffs fringe benefit contributions or damages in the amount of $43,-915.61 pursuant to the Agreement and Master Agreement. Of this amount, $24,-444.57 is for contributions on payroll employees, $9,770.94 is for damages for breach of the subcontracting clause in the Master Agreement and $9,700.10 is for damages for breach of the owner-operator clause in the Master Agreement. The damages for breach of the subcontracting clause and owner-operator clause have been calculated by the measure of unpaid contributions that would have been paid for those hours worked by these individuals if the clauses had not been breached by Cundiff.

12. The Master Agreement and Title 29 U.S.C. § 1132(g) obligate Cundiff to pay to the Trusts as and for liquidated damages for detriment caused by defendants' failure to pay fringe benefit contributions in a timely manner, a sum equal to ten percent (10%) of the total amount due to the Trusts, $25.00 per month or interest on the unpaid contributions at rates established pursuant to Title 26 U.S.C. § 6621. Liquidated damages are due to the Trusts from Cundiff in the amount of $4,391.56, pursuant to the terms of the Master Agreement.

13. In addition, the Master Agreement provides for payment of the costs of any audits conducted by the Trusts and for payment of reasonable attorney's fees incurred in collection of delinquent contributions. Audit costs of $1,000.00 have been assessed by the auditors and are due to plaintiffs by defendant.

14. Article II of the Agreement executed by Cundiff provides as follows:

"The EMPLOYER, not being signatory to any recognized Operating Engineers' multiple-employer agreement, hereby agrees to accept and be bound by all of the terms and conditions of multiple-employer agreements applicable to the EMPLOYER'S operations and in effect in the area in which the work is performed as recognized, modified and renewed from time to time through collective bargaining between the UNION and the ap-

plicable multiple-employer group. It is hereby agreed that the multiple-employer agreement(s) indicated below is the one most applicable to the EMPLOYER'S operations. Such multiple-employer agreement(s) is hereby adopted in its entirety, except those provisions in such multiple-employer agreement(s) which are in conflict with this agreement. Wherever such conflict exists the provisions of this agreement shall apply."

15. Article V of the Agreement executed by Cundiff on December 9, 1975, provides as follows:

"This Agreement shall become effective as of the date shown above and shall continue in effect for the same term as the applicable multiple-employer labor agreement and for any renewals or extensions thereof, unless either party shall give written notice to the other party, not less than ninety (90) nor more than one hundred twenty (120) days prior to the termination date of the appropriate multiple-employer agreement of its desire to terminate."

This paragraph is ambiguous when read with Article II of the Agreement and requires the Court to consider extrinsic evidence of the parties' intent and conduct regarding the termination date of the Agreement. The term for the applicable Master Agreement in effect at all times material herein was July 1, 1977, to June 15, 1980, and July 1, 1980 to June 30, 1983.

16. On March 15, 1981, Cundiff sent a letter to the Trusts alleging that he was out of business and requesting that the Trusts stop sending monthly reports. This letter was not a notice or request to terminate the Agreement and Master Agreement to Local 12 and was an untimely notice of termination even if it had been sent to Local 12 pursuant to Article V of the Agreement signed by Cundiff on December 9, 1974.

17. Local 12 and employers signatory to short form collective bargaining agreements have customarily treated such agreements as continuing to incorporate the amended terms of the Master Agreement when it is renegotiated at the end of its stated term unless a timely written notice of termination is received by Local 12 from the employer party to the short form agreement.

18. Local 12 and employers signatory to short form collective bargaining agreements have not treated such agreements as automatically terminating when the incorporated Master Agreement is renegotiated at the end of its stated term.

19. Local 12 and Cundiff did not treat the short form collective bargaining agreement signed by Cundiff on December 9, 1975, as automatically terminated when the incorporated Master Agreement was extended for the term of July 1, 1977, to June 15, 1980, or at any time thereafter. Cundiff and Local 12 have treated the Agreement as continuing in effect each time the Master Labor Agreement was renegotiated and extended. Cundiff has not given a timely written notice of termination to Local 12 pursuant to Article V in the Agreement.

20. Cundiff continued to enjoy the benefits of the Agreement and Master Agreement when the Master Agreement incorporated in the Agreement signed by Cundiff on December 9, 1975, was renegotiated and extended for the period of July 1, 1977, to June 15, 1980, and July 1, 1980, to June 30, 1983. Cundiff continued to request operating engineer employees from Local 12 and have them dispatched to its construction sites by Local 12 to perform work covered by the Master Agreement. Cundiff reported some, but not all, of the hours worked by or paid to these dispatched employees to the Trusts for purposes of fringe benefit contributions and these employees did receive certain benefits from the Trusts as a result of this reporting. Cundiff was able to maintain a stable work force with fixed labor costs and avoid possible interruption of work by continuing to comply, to some extent, with the terms of the Agreement and Master Agreement in effect for July 1, 1977, to June 15, 1980, and July 1, 1980, to June 30, 1983.

21. The parties to the Master Agreement intended to obligate each employer bound by the Master Agreement to take all steps necessary to establish a bona fide employer-employee relationship with each owner-operator whose services are used by the employer to perform work covered by the Master Agreement.

22. The parties to the Master Agreement intended that any signatory employer failing to make an owner-operator a bona fide employee should be required to pay damages to the Trusts in the amounts which would have been payable if the owner-operator had been made an employee, even though such damages would benefit all participating employees of the Trusts rather than a particular employee.

23. Plaintiffs have incurred reasonable attorney's fees in prosecuting this action, in the amount of $5,490.00 and defendant Cundiff owes plaintiffs said amount as attorney fees.

24. Pursuant to Title 29 U.S.C. § 1132(g) plaintiffs are also entitled to prejudgment interest on unpaid contributions. The prejudgment interest rate due to plaintiffs is established by Title 26 U.S.C. § 6621. Interest on the $43,915.61 in unpaid contributions and damages due to plaintiffs, from the date that said amounts were due to July 31, 1985, is $32,162.42 and plaintiffs are entitled to this sum from defendant.

25. Any Conclusion of Law which is deemed to be a Finding of Fact is incorporated into these Findings of Fact.

### CONCLUSIONS OF LAW

1. Any Conclusion of Law which may be either a Conclusion of Law or a Finding of Fact shall be treated as both a Conclusion of Law and Finding of Fact.

2. This Court has jurisdiction over this action under § 301(a) of the Labor Management Relations Act, as amended, and § 502(e)(1) of the Employee Retirement Income Security Act of 1974, as amended 29 U.S.C. § 185(a) and § 1132(e)(1), respectively.

3. Defendant Cundiff has been and is, bound to a collective bargaining agreement with Local 12, which incorporates by reference (with certain exceptions) the Master Labor Agreement between Local 12 and Southern California General Contractors Associations, for the period of July 1, 1974, to July 1, 1977, July 1, 1977, to June 15, 1980, and July 1, 1980, to July 1, 1983, and the Trust Agreements establishing the Operating Engineers Pension Trust, Operating Engineers Health & Welfare Fund, Operating Engineers Vacation-Holiday Savings Trust and Operating Engineers Training Trust. Cundiff has remained bound to the terms of these agreements at all times relevant to this action.

4. The Agreement signed by Cundiff and Local 12 is ambiguous as to whether the Agreement is meant to terminate automatically when the Master Agreement is renegotiated at the end of its stated term, or whether the Agreement is to continue to incorporate the amended terms of the Master Agreement unless a timely written notice of termination is received by Local 12 from the signatory employer. In order to determine the proper interpretation of the Agreement, the Court is required to consider extrinsic evidence of the intent and conduct of the parties to the contract, the custom, usage and practice concerning all similar related agreements, and the law in effect when the Agreement was made.

5. A collective bargaining agreement is different from an ordinary commercial contract. "It is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578, 80 S.Ct. 1347, 1350, 4 L.Ed.2d 1409 (1960). Such an agreement must be interpreted as a whole in light of the law relating to it when made, and in a manner consistent with the scope, practice, usage and custom pertaining to all related agreements. *Kemmis v. McGoldrick*, 706 F.2d 993, 996 (9th Cir.1983); *Transportation— Communication Employees Union v. Union Pacific Railroad Co.*, 385 U.S. 157, 87

S.Ct. 369, 17 L.Ed.2d 264 (1966). Extrinsic evidence of bargaining history and the parties' past practices should be considered even if the collective bargaining agreement is clear and unambiguous. *See Syufy Enterprises v. Northern Cal. State Ass'n of IATSE Locals*, 631 F.2d 124, 126 (9th Cir. 1980).

6. Nothing in *Seymour v. Coughlin Co.*, 609 F.2d 346 (9th Cir.1979), forecloses an employer from agreeing to be bound to the outcome of the renegotiation of the MLA. *Construction Teamsters Health & Welfare Trust v. Con Form Construction Corp.*, 657 F.2d 1101, 1103 (9th Cir.1981). *Coughlin* did not consider extrinsic evidence of the intent and conduct of the parties to the agreement, the custom, usage and practice in pertaining to all related agreements or the provisions of § 8(d) of the National Labor Relations Act [29 U.S.C. § 158(d)]. The Ninth Circuit has since held that a case by case adjudication is the appropriate method to use when interpreting a short form collective bargaining agreement, and that no *per se* rule was established by the court in *Coughlin*. *Zinser-Furby, Inc. v. San Diego County District Council of Carpenters*, 681 F.2d 1171 (9th Cir.1982). Where the termination provisions in short form agreements are subject to more than one interpretation, the Ninth Circuit has directed the court to look at extrinsic evidence of the parties conduct and the custom and practice in the industry to determine if the parties intended the contract to remain in effect until a timely termination notice. *See Winton Kemmis v. James P. McGoldrick*, 767 F.2d 594 (9th Cir., 1985); *William C. Waggoner v. Robert Lee Dallaire*, 767 F.2d 589 (9th Cir. 1985) and *Arizona Laborers, Teamsters & Cement Masons Local 395 Health & Welfare Trust Fund v. Conquer Cartage Co.*, 753 F.2d 1512 (9th Cir.1985).

7. Based on the evidence of practice, usage and custom pertaining to all of Local 12's short form collective bargaining agreements, such agreements continue to incorporate the amended terms of the Master Agreement when the Master Agreement is renegotiated and extended at the end of its stated term unless a timely written notice is received by Local 12 from the employer party to the short form agreement. Such short form agreements do not automatically terminate when the incorporated Master Agreement is renegotiated at the end of its stated term.

8. In the instant case, the circumstances are such that Cundiff cannot claim that he is not bound by the terms of the Master Agreement and his Agreement. Throughout the years in question in this case, Cundiff sought covered employees from the Local 12 hiring hall to work for him, and Cundiff made reports showing that he had employed covered employees and made contributions for some employees to the trust funds involved. What Cundiff owes to the Trusts are the contributions required to be made for other employees and other times during the period involved.

9. The Agreement signed by Cundiff on December 9, 1975, was not automatically terminated when the incorporated Master Agreement was extended for the term of July 1, 1977, to June 15, 1980, and July 1, 1980, to June 30, 1983. Cundiff has remained bound to the terms of the Agreement and Master Agreement at all times material to this action.

10. The Master Agreement that Cundiff is bound to requires the payment of fringe benefit contributions for all hours worked by or paid to employees performing work covered by the Master Agreement. In *Waggoner v. C & D Pipeline Co.*, 601 F.2d 456, (9th Cir.1979), *Burke v. Lenihan*, 606 F.2d 840 (9th Cir.1979), and *Waggoner v. Wm. Radkovich Co., Inc.*, 620 F.2d 206 (9th Cir.1980), the Ninth Circuit has interpreted and enforced the identical language in the Master Labor Agreement between Local 12 and the Southern California General Contractors Associations. The business agents for Local 12 or any other union are not the agents of the Trusts, nor do they have any authority to modify the obligations of Cundiff to the Trusts. Any alleged oral agreement to do so would be unenforceable under 29 U.S.C. § 186(c).

*See Waggoner v. Dallaire,* 649 F.2d 1362 (9th Cir.1981) and *Kemmis v. McGoldrick,* 706 F.2d 993 (9th Cir.1983). Cundiff is obligated to report and pay fringe benefit contributions for all hours worked by or paid to an employee who performs any work covered by the Master Agreement. Cundiff has failed to pay fringe benefit contributions of $24,444.57 on payroll employees who performed covered work and this amount is due to plaintiffs.

11. The Master Agreement which Cundiff is bound to also requires that he only subcontract work covered by the Agreement and Master Agreement to contractors who are signatory to the proper agreements. These types of subcontracting provisions have been upheld by the United States Supreme Court in *Woelke v. Romero Framing, Inc. v. NLRB,* 456 U.S. 645, 102 S.Ct. 2071, 72 L.Ed.2d 398 (1982). The auditor for the Trusts found several employers who Cundiff had subcontracted work to which was covered by the Master Agreement for which no fringe benefit contributions have been paid to the Trusts. This action by Cundiff is a breach of the express terms of the Master Agreement. The plaintiffs are entitled to damages from Cundiff in an amount "measured by" the hours worked by or paid to the subcontractors and their employees who were performing work covered by the Master Agreement. Damages of $9,770.94 are due to the plaintiffs by Cundiff for this breach of the Master Agreements.

12. The Ninth Circuit previously interpreted an owner-operator clause in the San Diego County Master Labor Agreement in *Todd v. Benal Concrete Co.,* 710 F.2d 581 (9th Cir.1983). In that case, the evidentiary record was held to be insufficient to show that the agreement intended a true employer-employee relationship to be established between the signatory employer and the owner-operator. That evidentiary requirement has been satisfied in this case by the extrinsic evidence establishing that the bargaining parties intended to require bona fide, actual employer-employee relationship with any owner-operator whose services are used by the employer.

13. Nothing in federal labor policy prohibits a union and an employer in the construction industry from agreeing that a person working for the employer on a construction site will be made an employee. Section 302(c)(5) of the Labor Management Relations Act of 1947, as amended [29 U.S.C. § 186(c)], was not intended to inhibit the participation by employees in employee benefit plans, but rather was intended to prohibit payments from employers to union representatives for corrupt purposes and to assure that monies payable to employee benefit plans will be secure and used solely for the benefit of covered employees. *Waggoner v. Dallaire,* 649 F.2d 1362, 1366 (9th Cir.1981). A collective bargaining agreement clause which measures the employer's obligation to employee benefit trusts by the amount of work performed by the employees of a non-signatory subcontractor is lawful, even though those employees will not be eligible for benefits from the trusts. *Walsh v. Schlecht,* 429 U.S. 401, 97 S.Ct. 679, 50 L.Ed.2d 641 (1977). A similar clause designed to assure that the persons performing the work are employees covered by the written agreement is equally lawful, and should be recognized for its salutary effect in assuring that the economic benefits flowing from the work effort will accrue to the persons actually performing the work.

14. Under the Master Agreement, if the employer performs the obligation to establish a bona fide employer-employee relationship with the owner-operator, the employer is obligated to make fringe benefit contributions to the Trusts on behalf of the employee as required elsewhere in the MLA. In addition, if the employer fails to take the action necessary to create an employer-employee relationship with the owner-operator, the Master Agreement provides a remedy in damages to the Trusts for the breach of contract measured by and equal to all amounts which would have been payable to the Trusts if the owner-operator had been made a bona fide employee.

15. Cundiff failed to take any action to establish a bona-fide employer-employee relationship with his owner-operators and, therefore, breached the owner-operator clause of the Master Agreement. The Trusts are entitled to damages measured by and equal to the amounts due for fringe benefit contributions had Cundiff made these owner-operators his bona-fide employee. This amount is the sum of $9,700.10.

16. In addition to the fringe benefit contributions and damages for breach of contract, the plaintiffs are entitled to prejudgment interest through July 31, 1985, in the sum of $32,162.42, audit costs of $1,000.00, liquidated damages of $4,391.56, and reasonable attorney's fees in the amount of $5,490.00, pursuant to the Master Agreement and 29 U.S.C. § 1132(g)(2). *Operating Engineers Pension Trust v. Reed*, 726 F.2d 513 (9th Cir.1984); *Kemmis v. McGoldrick*, 706 F.2d 993 (9th Cir.1983).

17. The Trusts are entitled to their costs of suit from Cundiff.

18. Judgment shall be entered in favor of plaintiffs and against defendant.

## JUDGMENT

The above-entitled case came on regularly for trial on April 25, 26 and 27, 1984, and July 11, 1984, before the Court, the Honorable Francis C. Whelan, United States District Judge, presiding.

Having reviewed all of the pleadings, records, files and evidence taken at trial in this matter, and the Court having signed its Findings of Fact and Conclusions of Law, it is hereby,

ORDERED, ADJUDGED AND DECREED that plaintiffs, Operating Engineers Pension Trust, Operating Engineers Health & Welfare Fund, Operating Engineers Vacation-Holiday Savings Trust and Operating Engineers Training Trust, shall recover from defendant, George Cundiff, Jr., individually and doing business as George Cundiff Associates and G.C.A., the

sum of $43,915.61 in unpaid fringe benefit contributions and contract damages, $4,391.56 in liquidated damages and $1,000.00 in audit costs for a total principal of $49,307.17, plus $32,162.42 in pre-judgment interest through July 31, 1985, and $5,490.00 in attorney's fees for a total of $86,959.59, plus plaintiffs' cost of suit of $_____.