788 F.2d 620
 122 L.R.R.M. (BNA) 2404, 122 L.R.R.M. (BNA) 3069,
104 Lab.Cas. P 11,942
 OPERATING ENGINEERS PENSION TRUST, Operating Engineers
Health and Welfare Fund, Operating Engineers
Vacation-Holiday Savings Trust and
Operating Engineers Training
Trust, Plaintiffs-Appellants,
v.
Luigi GIORGI, individually and doing business as Giorgi
Cement Company, Defendant-Appellee.
 No. 85-5823.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 5, 1986.
Decided April 28, 1986.
As Amended July 9, 1986.
 
 1
 Wayne Jett, Los Angeles, Cal., for plaintiffs-appellants.
 
 
 2
 Patricia Zugibe, Santa Ana, Cal., for defendant-appellee.
 
 
 3
 Appeal from the United States District Court for the Central District of California.
 
 
 4
 Before SNEED and KOZINSKI, Circuit Judges, and SOLOMON,* District Judge.
 
 SOLOMON, District Judge:
 
 5
 Appellants, Operating Engineers Pension Trust and other Operating Engineers benefit trusts (the Trusts), appeal the district court's decision which found that appellee, Luigi Giorgi, a small subcontractor, is not bound by a collective bargaining agreement between the general contractor and the Operating Engineers Union. As a condition to remaining on the job, Giorgi signed a "short-form" agreement which incorporated the provisions of the collective bargaining agreement and which required Giorgi to make double contributions for the hours worked by one of Giorgi's employees even when he was not performing work within the jurisdiction of the union. We commend the district court's effort to reach a fair result, but the case law of this circuit requires us to reverse.
 
 Facts
 
 6
 On April 12, 1979, Giorgi, a subcontractor, was working at a building site. The general contractor had signed a collective bargaining agreement with Local 12, Operating Engineers Union. One of Giorgi's employees, Flores, was a member of the Laborers Union. On April 12, 1979, while Flores was operating a skiploader, a task within the jurisdiction of the Operating Engineers, the general contractor was notified that Giorgi could not stay on the job site unless he signed a collective bargaining agreement with the Operating Engineers.
 
 
 7
 After a brief conversation with the business agent for the Operating Engineers, Giorgi signed a short form agreement which incorporated the Master Labor Agreement between the Operating Engineers and the Southern California General Contractors. The Master Agreement authorizes the Labor Management Adjustment Board to interpret and enforce the Master Agreement.
 
 
 8
 In 1972, seven years before Giorgi signed the agreement, the Adjustment Board adopted a resolution which provides:
 
 
 9
 [W]hen an employee has been dispatched by the Union to a Contractor and the employee performs any work whatsoever covered by the Agreement, the Contractor shall be obligated to pay fringe benefit contributions to the Trusts at the required rate for each and every hour worked by the employee or paid for by the Contractor.
 
 
 10
 (Emphasis added).
 
 
 11
 The Adjustment Board noted that an employee sometimes is a member of more than one union and may be dispatched by more than one union to the same job. The Adjustment Board stated that this practice conflicts with the intent of the collective bargaining agreement and that therefore "any employee dispatched by the Union under this Agreement shall perform only work covered by this Agreement, and fringe benefit contributions shall be payable on all hours worked by such employee or paid for by the Contractor."
 
 
 12
 From April 12, 1979 through March 31, 1981, Flores worked both as a laborer and as a skiploader operator. Giorgi reported the hours Flores worked as a laborer to the Laborers Union and reported the hours Flores worked as a skiploader to the Operating Engineers. Giorgi contributed to each union's pension benefit trusts according to the hours he reported to each union.
 
 
 13
 On May 6, 1983, the Operating Engineers Trusts filed an action to require Giorgi to contribute to the Trusts for all the hours Flores worked, not just as a skiploader but also as a laborer.
 
 District Court Proceedings
 
 14
 Giorgi testified that on April 12, 1979, when he signed the short form agreement, the business agent for the Operating Engineers assured him that he would be called upon to contribute to the Trusts only for the hours Flores worked as a skiploader. The business agent denied that he had such a conversation.
 
 
 15
 The district court found Giorgi's testimony to be credible and the business agent's testimony incredible. The court also found that the only hours Flores worked which Giorgi did not report to the Trusts were reported and paid to the Laborers Union trust.
 
 
 16
 The district court held that the oral agreement between Giorgi and the business agent is not enforceable. Nevertheless, the court held in favor of Giorgi on the ground that Giorgi is not bound by the Adjustment Board's 1972 resolutions because he did not receive notice of the resolutions. The court also found that even if Giorgi is bound by the resolutions, they do not apply because Flores was not "dispatched" by the union as required by the resolutions.
 
 
 17
 The district court dismissed the Trusts' action. The Trusts appeal.
 
 Standard of Review
 
 18
 We review de novo the district court's interpretation of the collective bargaining agreement. Operating Engineers Pension Trust v. Charles Minor Equipment Rental, Inc., 766 F.2d 1301, 1303 (9th Cir.1985).
 
 Discussion
 
 19
 Giorgi operates a small family-owned cement business. He was not a party to the collective bargaining sessions when the Master Labor Agreement was drafted, and he was not aware of the Adjustment Board's 1972 resolutions which require him to make double contributions for the hours Flores worked. Giorgi testified, and the district court found, that he relied on the statements of the business agent that Giorgi would not have to make contributions to both the Laborers Union and the Operating Engineers for the same hours.
 
 
 20
 The Trusts claim more than thirteen thousand dollars in unpaid fringe benefit contributions for Flores even though Giorgi already paid contributions on every hour Flores worked. The Trusts contend that the double contribution requirement applies even if the employee's benefits never vest.
 
 
 21
 Under the case law of this circuit, we must hold in favor of the Trusts.
 
 
 22
 This court in Waggoner v. Dallaire, 649 F.2d 1362 (9th Cir.1981), rejected attacks against the same Master Labor Agreement, and the same "short form" collective bargaining agreement, which the same international union had entered into with an individual contractor. The trial court found that the Local 12 business agent had represented that if the short form agreement was entered into, the trust benefit terms would not be enforced.
 
 
 23
 In that case, this court held that oral agreements between an employer and a union representative may not be considered when the court interprets a collective bargaining agreement. Id. at 1366.
 
 
 24
 The district court correctly concluded that any oral agreement between Giorgi and the business agent that contributions would be limited to covered employment is unenforceable.
 
 
 25
 Under Dallaire, we are precluded from finding that the short form agreement that Giorgi signed in order to stay on the job is an unenforceable contract of adhesion. In Dallaire, we stated that "parties to a collective bargaining agreement are conclusively presumed to have equal bargaining strength." Id. at 1367.
 
 
 26
 Giorgi is bound by the 1972 resolutions even though he did not receive notice of them. The Adjustment Board's resolutions are enforceable even though they are not written into the Master Labor Agreement. Waggoner v. C & D Pipeline Company, 601 F.2d 456, 459 (9th Cir.1979).
 
 
 27
 Giorgi's contentions that the 1972 resolutions do not apply to him are not supportable. First, Giorgi contends that the 1972 resolutions do not contemplate a situation in which an employee belongs to more than one union. This court has already held that an employer must contribute to union trust funds for all the hours his employees work even if some of their work is not within the union's jurisdiction. Maxwell v. Lucky Construction Company, Inc., 710 F.2d 1395 (9th Cir.1983); Waggoner v. C & D Pipeline Company, supra, 601 F.2d 456 (9th Cir.1979).
 
 
 28
 Giorgi also contends that the Operating Engineers did not "dispatch" Flores because Flores was already working for Giorgi when Giorgi signed the short form agreement.
 
 
 29
 After Flores was forced to join the Operating Engineers, the union completed the paperwork necessary to assign Flores to Giorgi. We hold that the union "dispatched" Flores as that term is used in the 1972 resolutions.
 
 
 30
 Finally, Giorgi contends that the district court properly concluded that the double contribution rule violates section 8(b)(1)(A) of the National Labor Relations Act, which prohibits the restraint or coercion of employees in the exercise of their rights. The purpose of section 8(b)(1)(A) is to prevent "violence, intimidation, and reprisal or threats thereof," NLRB v. Drivers Local Union No. 639, 362 U.S. 274, 290, 80 S.Ct. 706, 715, 4 L.Ed.2d 710 (1960), none of which are present here. Section 8(b)(1)(A) does not apply.
 
 
 31
 We hold that Giorgi is bound by the Master Labor Agreement and by the 1972 resolutions which require him to make double fringe benefit contributions for the hours Flores worked, regardless of the nature of that work. This court has considered the Operating Engineers agreement and similar agreements many times. Each time, this court held that the agreement shall be enforced even when the union agent did not explain its terms or the consequences of the signing to the employer and even when the evidence showed that the union agent misled the employer. Established case law in this circuit supports unions when they impose hidden, burdensome obligations on small employers who have little or no bargaining power. Until this court reconsiders these decisions en banc, this situation will persist.
 
 
 32
 The Trusts are entitled to attorney fees on appeal because they prevailed. Kemmis v. McGoldrick, 706 F.2d 993, 997 (9th Cir.1983).
 
 
 33
 REVERSED.
 
 
 34
 KOZINSKI, Circuit Judge, concurring.
 
 
 35
 I reluctantly join the court's opinion because I believe it faithfully applies the law of this circuit. The result we reach is difficult to reconcile, however, with good sense, good conscience or good law. In an effort to carry out the congressional mandate embodied in section 302(c)(5) of the Labor Management Relations Act (LMRA), the court has given the union carte blanche to commit fraud upon small employers like appellee, abrogating principles of contract dating to the earliest days of the common law. I do not think that is what Congress intended, and nothing in the language or legislative history of section 302(c)(5) justifies this result.
 
 
 36
 Since this case was decided after trial, and the district court made findings of fact, we can be certain as to what happened. Appellee operates a mom and pop subcontractor business. Mr. Giorgi runs the business; Mrs. Giorgi keeps the books; Aaron F. Flores was their employee. In 1979, the union discovered Flores on a worksite operating a skiploader, a task within the jurisdiction of the Operating Engineers. Given the choice of signing a short form agreement or being thrown off the worksite, Giorgi signed. Before doing so, however, he asked the union's business agent whether he would be required to contribute to the trust fund for hours Flores worked as a laborer. The business agent assured him that he would not.
 
 
 37
 For almost two years thereafter, Giorgi paid some $9,500 to the Laborers' Trust in reliance upon the representation of the Operating Engineers' business agent. The Master Labor Agreement and the resolution of the Adjustment Board, documents that would have advised Giorgi that he was required to pay the Operating Engineers even for the time Flores worked as a laborer, were never presented to him. The union allowed Giorgi to rely on the representations of its agent, to his great financial detriment. To add injury to injury, we now award attorney's fees to the pension fund because it has prevailed in the litigation.
 
 
 38
 The basis for this result is a terse phrase in section 302(c) of the LMRA providing that the trust agreement be in writing, which this court has interpreted as prohibiting oral modifications of the agreement. E.g., Maxwell v. Lucky Construction Co., 710 F.2d 1395, 1398 (9th Cir.1983); Kemmis v. McGoldrick, 706 F.2d 993, 996 (9th Cir.1983); San Pedro Fishermen's Welfare Trust Fund v. Di Bernardo, 664 F.2d 1344, 1345 (9th Cir.1982); Waggoner v. Dallaire, 649 F.2d 1362, 1366 (9th Cir.1981). This is in the nature of a statute of frauds and appears to have been intended to avoid corrupt practices in the administration of employee welfare funds. Dallaire, 649 F.2d at 1366. It is quite a leap, however, from a provision requiring that agreements be in writing, to one that abrogates basic principles of contract law: mutual assent, estoppel and fraud in the inducement. See Connick v. Teachers Insurance & Annuity Assoc., 784 F.2d 1018, 1022 (1986) (a contract can be reformed when one party is mistaken and the other party knows or suspects the first party is mistaken); Michael Distributing Co. v. Tobin, 225 Cal.App.2d 655, 37 Cal.Rptr. 518 (1964) ("purpose of statute of frauds is to prevent, not effectuate, wrong"); Restatement (Second) of Contracts Sec. 163 (1979) ("[i]f a misrepresentation as to the character or essential terms of a proposed contract induces conduct that appears to be a manifestation of assent by one who neither knows nor has reasonable opportunity to know of the character or essential terms of the proposed contract, his conduct is not effective as a manifestation of assent").
 
 
 39
 While protecting trust funds from fraud is important, I cannot believe that the congressional purpose is served by holding a tiny subcontractor to a massive contract, the contents of which he has never seen and as to which the union's representative has lied. At the very least, it would seem that there was not a meeting of the minds, and therefore no contract. See Joseph, v. Donover Co., 261 F.2d 812, 820 n. 11 (9th Cir.1958) ("to create a contract ... the minds of the parties must meet as to every essential term of the proposed contract"); Restatement Sec. 163.
 
 
 40
 I find this case particularly troubling because it does not appear to represent an isolated incident. There have now been a number of occasions where misstatements by representatives of this very union regarding the pension plan have been alleged and proved. See Operating Engineers Pension Trust v. Gilliam, 737 F.2d 1501 (9th Cir.1984); McGoldrick, 706 F.2d at 995; Dallaire, 649 F.2d at 1365; cf. Maxwell v. Lucky Construction Co., 710 F.2d at 1397 (employer relied on union representative's oral representation regarding contributions). Once put on notice that its agents were misleading some employers, and that many more employers were signing the short form agreement without fully appreciating its terms, what did the union do? Did it clarify the short form agreement? Did it provide copies of the Master Labor Agreement and the relevant orders of the Adjustment Board to signatory employers? Did it prepare a simple, concise summary of the key terms of the full contract and attach it to the short form agreement? Did it modify the short form agreement to disclaim any oral representations made by the union's business agent? As far as this record reflects, the union has done none of these things. And why should it? After all, it can be confident that employers caught in the web of misstatement or misunderstanding spun by its agents will be without legal recourse, and that any employers foolish enough to resort to the courts will have to bear the trust fund's attorney's fees for defending the suit.
 
 
 41
 To reach this result requires, in my view, a very broad reading of a statutory provision that calls for nothing more than a written trust agreement, a provision intended to avoid fraud on the trust fund. I think the drafters of the legislation would be surprised to learn that it has been interpreted to sanction fraud by the trust fund.[1]
 
 
 42
 I concur, but not without grave misgivings.
 
 
 
 *
 The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 This case does not raise the issue of whether the employer may recover from the union damages suffered as a result of the fraud