**CARPENTERS SOUTHERN CALIFORNIA ADMINISTRATIVE CORP.,**
Plaintiff-Appellant,

v.

**J.L.M. CONSTRUCTION CO., INC.,**
Defendant-Appellee.

No. 85–6338.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 10, 1986.

Decided Feb. 4, 1987.

Karen L. Holliday, Los Angeles, Cal., for plaintiff-appellant.

Walter C. Appling, San Pedro, Cal., for defendant-appellee.

Before ANDERSON, POOLE and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

The administrator of six employee benefit trust funds brought this action under the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(3) (1982). The Trusts were established between the United Brotherhood of Carpenters and Joiners of America (Union) and various multi-em-

ployer associations in the Southern California construction industry pursuant to Section 302(c) of the Labor Management Relations Act, 29 U.S.C. § 186(c). The administrator sought to recover allegedly delinquent employer trust contributions from the J.L.M. Construction Company (JLM). The district court held that by its conduct JLM had provided sufficient notice to the Union to repudiate its contractual obligations, and dismissed the action.[1] We affirm.

## I

## FACTS AND PROCEEDINGS

In August 1977, JLM was completing a carpentry subcontracting job (the Bendix job) when the Union threatened to picket JLM because it lacked Union affiliation. A Union representative, Mr. Riviezzo, visited the Bendix job site and informed the JLM president, James Mann, that the Union would not picket the Bendix site if JLM signed the Master Labor Agreement between the Union and Southern California General Contractors.

On August 10, 1977, Mann met Riviezzo and signed two short-form agreements with the Union, which incorporated by reference the terms and conditions of the Master Labor Agreement. Mann neither read nor received copies of the short-form agreements or the Master Labor Agreement. These agreements constituted a pre-hire agreement under Section 8(f) of the National Labor Relations Act, 29 U.S.C. § 158(f) (1982).[2]

Under this pre-hire agreement, JLM agreed to make contributions to the Trusts for each hour worked by any employees who performed covered carpenter work. JLM was also required to submit monthly report forms to the Trust specifying the hours worked and the amount of contributions earned by each covered employee.

JLM fulfilled its obligations under the pre-hire agreement until it finished the Bendix job in late August or early September 1977. Susan Mann, JLM's vice president and office manager, completed the Employer's Monthly Report to Trustees for August 1977 and sent a check to the Trusts for the employer contributions for the hours worked by the two JLM Carpenter employees on the Bendix job. JLM also paid the $300 union initiation fees for these two employees.

In September 1977, after receiving another Employer's Monthly Report form, Susan Mann called the Trust office to request that no additional forms be sent because JLM no longer wished to be bound by the Union agreements. She was told to check the appropriate box and return the form if no carpenters worked during the month. Despite Susan Mann's request, JLM continued to receive the monthly report forms. Susan Mann telephoned the Trust office several times to inquire why JLM was continuing to receive the forms. She told the Trust office personnel that JLM no longer was bound or wished to be bound to any agreements with the Union, that JLM did not feel it was obligated to make contributions, and that JLM did not want to receive any more forms. She did not call the Union nor communicate with it. JLM's monthly report form submitted to the Trusts for November, 1977 bears the notation: "PLEASE DO NOT SEND US THESE FORMS ANY MORE. PUT US ON THE INACTIVE LIST. THANK

---

1. The district court also held that JLM's statements to representatives of the Trusts were sufficient to provide notice to the union and terminate its contractual obligations. Because we agree that JLM's conduct was sufficient to repudiate the agreement, we do not reach this issue.

2. The district court found that Riviezzo assured Mann the short-form agreements applied exclusively to the Bendix job, and that the agreements would not commit JLM to future Union obligations. We give no weight to this finding,

however, because we have previously concluded that collective bargaining agreements may not be modified by oral agreements between employers and union representatives. *See, e.g., Waggoner v. Dallaire,* 649 F.2d 1362, 1366 (9th Cir.1981); *Operating Engineers Pension Trust v. Giorgi,* 788 F.2d 620, 627 (9th Cir.1986) ("[a]ny oral agreement between [employer] and the [union] business agent that [trust] contributions would be limited ... is unenforceable.").

YOU." On December 9, 1977, JLM sent the Trusts a trust form letter indicating that JLM was "inactive."[3]

The Union never achieved majority status among JLM's employees. Thus, either party was entitled to terminate the agreement at any time. On July 20, 1982, JLM sent a letter to the Union, giving formal written notice that JLM was repudiating the pre-hire agreement.[4] The parties stipulated that this letter terminated the agreement unless a repudiation had previously been effected by JLM's conduct.

In October 1983, the Trusts filed a complaint seeking to recover delinquent Trust contributions. On August 28, 1985, after a bench trial, the court entered judgment in favor of JLM and dismissed the action. The court, in accordance with Rule 52(a) of the Federal Rules of Civil Procedure found the following facts:

> Following December 1, 1977 [JLM] acted as a general contractor on various projects and hired both subcontractors and employees. [JLM] bid as a nonunion general contractor and was awarded construction work between August 1977 and early 1982 in a gross amount of eighteen to twenty million dollars. [JLM] never represented that it had a contract with the Union in bidding for that construction work. [JLM] never used the Union's hiring hall to obtain employees. [JLM] did not pay its employees in accordance with union wage scales and did not pay fringe benefit contributions to the trusts.

The district court also found that "[f]ollowing December 1, 1977 [JLM] engaged in activity overtly and completely inconsistent with putative contractual obligations." Based on these findings of fact, the district court concluded that JLM's conduct between 1977 and 1982 "imparted notice to any reasonable person that defendant did not intend to be bound by any pre-hire agreement and intended to repudiate and terminate the pre-hire agreements."

## II

## ANALYSIS

### A. *Introduction*

A pre-hire agreement is a labor contract under Section 8(f) of the National Labor Relations Act, 29 U.S.C. § 158(f) between a union and an employer engaged primarily in the construction industry. Section 8(f) of the Act is a statutory exception to the general labor policy that an employer can only enter into a collective bargaining relationship with a union that represents a majority of the employer's employees. *Orange Belt District Council of Painters v. Kashak*, 774 F.2d 985, 987–88 (9th Cir. 1985); *Todd v. Jim McNeff, Inc.*, 667 F.2d 800, 801–02 (9th Cir.1982), *aff'd*, 461 U.S. 260, 103 S.Ct. 1753, 73 L.Ed.2d 1382 (1983).

Although a pre-hire agreement is legally binding by virtue of Section 8(f), it does not mature into a full collective bargaining agreement until a majority of the employer's employees join the union. *Jim McNeff v. Todd*, 461 U.S. 260, 271, 103 S.Ct. 1753, 1759, 73 L.Ed.2d 1382 (1983). Until the union achieves majority status, the employer retains the right to repudiate a Section 8(f) pre-hire agreement. *Id.* The issue we decide in this case is whether JLM, the employer, provided sufficient notice to the Union by its conduct to repudiate the pre-hire agreement.

### B. *Standard of Review*

Whether an employer's conduct is sufficiently overt and inconsistent with the terms of a pre-hire agreement to put a union on notice of an employer's repudiation involves an essentially factual inquiry. *See, e.g., Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan*

---

**3.** This form letter was customarily sent out by the Trusts and used to remove an employer from the mailing list. The Trusts deleted JLM from active status on December 16, 1977.

**4.** The record indicates that in April of 1982 the trusts reactivated JLM's file and notified the company of their intention to audit JLM's records. This audit prompted JLM to seek the advice of counsel, which led to this formal notice to the Union.

v. Harkins Construction & Equipment Co. ("Harkins"), 733 F.2d 1321, 1326 (8th Cir.1984) ([this raises a] question of fact that requires an examination of the conduct of all the parties). Accord Suburban Teamsters v. Callaghan Paving, Inc., 583 F.Supp. 105 (N.D.Ill.1984).

■ In United States v. McConney, 728 F.2d 1195, 1202 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984), we stated that "if application of the rule of law to the facts requires an inquiry that is essentially factual the district court's determination should be reviewed under the clearly erroneous standard." Because we believe the underlying inquiry here is essentially factual, the district court's conclusion that JLM's conduct was sufficient to repudiate the pre-hire agreement is reviewed under the clearly erroneous standard. See also Anderson v. The City of Bessemer, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (Title VII case); U.S. v. Lembke Construction Co., Inc., 786 F.2d 1356 (9th Cir.1986); Lads Trucking Co. v. Board of Trustees, 777 F.2d 1371 (9th Cir.1985).

C. Repudiation by Conduct

■ There are three distinct methods by which an employer can repudiate a pre-hire agreement: (1) by calling for a repudiation election to show that the union does not enjoy majority support; (2) by giving actual notice (written or oral) to the union; or (3) by engaging in conduct so overtly inconsistent with contractual obligations that it is sufficient to put the union on notice of the employer's intent to repudiate. See, e.g., Harkins, 733 F.2d at 1326; Suburban Teamsters, 583 F.Supp. at 109. This court has previously recognized the first two "types" of repudiation. See, e.g., Operating Engineers Pension Trust v. Beck Engineering & Surveying Co., 746 F.2d 557, 564–66 (9th Cir.1984). Today we conclude that an employer may also repudiate a pre-hire agreement by conduct.

While no precedent directly addresses the efficacy of repudiation by conduct of a pre-hire agreement, both Supreme Court and Ninth Circuit decisions suggest that conduct completely inconsistent with the contractual obligations of a pre-hire agreement may effect a repudiation. The Supreme Court has stated:

It is not necessary to decide in this case what specific acts would effect the repudiation of a pre-hire agreement—sending notice to the union, engaging in activity overtly and completely inconsistent with contractual obligations, or, as respondent suggests, precipitating a representation election pursuant to the final proviso in Section 8(f) that shows the union does not enjoy majority support.

McNeff v. Todd, 461 U.S. at 270–71 n. 11, 103 S.Ct. at 1759 n. 11. Similarly, we have commented, "[w]hile it is clear that in some circumstances non-compliance can be so bald as to put the union on notice of the employer's intent to repudiate (see, e.g., Higdon, 88 L.R.R.M. 1067), the behavior here falls short." Todd v. McNeff, 667 F.2d at 804. And in United Brotherhood of Carpenters v. Endicott Enterprises, Inc. ("Endicott"), 806 F.2d 918 (9th Cir. 1986), a case in which the employer "did not comply with a single term of the pre-hire agreement" (id. at 922) and the Union had actual notice of the employer's acts of repudiation, we concluded that the district court had not erred in finding the employer's "actions sufficiently bald and open to give the Union notice of [the employer's] intent to repudiate." Id.

■ In the present case the district court found JLM's conduct to be so overt and inconsistent with its contractual obligations that the Union was charged with notice of repudiation. The Trusts contend this was error. They note that mere non-compliance with contractual obligations is legally insufficient to effect a repudiation (Harkins, 733 F.2d at 1326), and argue that JLM's conduct was legally insufficient to put the Union on notice of the company's intent to repudiate because JLM's actions amounted to no more than a breach of its contractual obligations.

While JLM's failure to pay Union wages and Trust contributions were contractual

violations, the company's conduct constituted much more than mere non-compliance. From September 1977 to July 1982, a period of almost five years, JLM did not exercise any of its rights under the agreement. During this period, JLM was awarded contracts amounting to nearly 20 million dollars. In bidding for construction work, the company never represented that it had a Union contract, and it did not benefit from union affiliation to win construction contracts. JLM never used the Union hiring hall to find subcontractors and employees. JLM had no contact with the Union during this period. The only communication it received pertaining to the pre-hire agreement was from the Trust and its response was inconsistent with any continuing contractual obligation. Over the five-year period, JLM did not perform any of its obligations under the pre-hire agreement, and, unlike *McNeff*, JLM never attempted to enjoy any benefits of the agreement. Moreover, during the same five-year period, so far as the record shows, the Union and its representatives took no action of any kind to enforce its rights under the short-form agreement.

■ The Trusts contend that JLM's conduct cannot provide the basis for charging the Union with notice of JLM's intent to repudiate the pre-hire agreement because there is no evidence that the Union knew of that conduct. This argument confuses repudiation by conduct with repudiation by actual notice.[5] The doctrine of repudiation by overtly inconsistent conduct is based on the concept of constructive as opposed to actual notice. The rationale is that an employer's conduct may be so blatantly inconsistent with its contractual obligations that notice of repudiation is attributed to the union. *See Todd v. McNeff*, 667 F.2d at 804; *Harkins*, 733 F.2d at 1326; *Endicott*, at 922–23. Accordingly, to repudiate by conduct, there is no need for the employer

to show the Union had actual notice of the inconsistent conduct.

As the district court concluded, here the employer did everything it could to repudiate the agreement, short of sending actual notice to the Union. We cannot accept the argument that JLM, which engaged in conduct overtly and completely inconsistent with the pre-hire agreement obligations over a five-year period, must also show that the Union actually knew of that conduct. Such a holding would contravene the basic policy concerns underlying the doctrine of repudiation by conduct.

The district court heard conflicting testimony and determined that JLM's conduct was sufficient to afford a reasonable person constructive notice of repudiation. We cannot say that this essentially factual determination was clearly erroneous.

AFFIRMED.

POOLE, Circuit Judge, dissenting:

The district court's holding that J.L.M. effectively repudiated the pre-hire agreement by conduct prior to the issuance of its formal letter of repudiation is untenable. The findings of fact simply do not support this conclusion. Since it is clear error for a district court to reach a conclusion which is unsupported by its own factual findings, we must, if we are to remain faithful to rationality, reverse the judgment. From the majority's affirmance of a clearly wrong judgment, I am forced to dissent.

The record is devoid of any evidence supporting a conclusion that the Union knew of J.L.M.'s contractual violations. The district court found only that after December 1, 1977 J.L.M. did not use the union hiring hall, pay union wages or fringe benefits, contact the Union, or bid as a union employer. It never found that the Union was actually aware of *any* of these omissions.

---

**5.** Appellants' argument attempts to fuse two fundamentally different types of repudiation. We disagree with the dissent's contention that an employer must demonstrate the Union knew of the inconsistent conduct, because repudiation by conduct will only occur in precisely the situation before us: where an employer has *not* directly notified the union it wishes to repudiate. In these cases, the law will attribute notice to the union if the employer has acted in a sufficiently conspicuous manner. *See Harkins*, 733 F.2d at 1376.

Moreover, contrary to the majority's assumption, the findings do not support the conclusion that the Union *should* have known of J.L.M.'s contractual violations either. That J.L.M. did not use the hiring hall is not shown to have been something that must surely have come to the attention of the Union, and, in the absence of an employee grievance, the Union would not be on notice that J.L.M. was not paying union wages. Similarly, there is no evidence that the Union generally monitored construction activities or contract bidding by non-Union employees. Nor is there any evidence that a union representative visited any J.L.M. work site and learned that it was violating the pre-hire agreement. In view of the very large size of the southern California territory, it is not at all unreasonable for the Union to have failed for so long to detect J.L.M.'s violations. The finding that J.L.M. did not communicate with the Union in the period between December 1, 1977 and July 20, 1982, if anything, supports the conclusion that the Union was unaware of the fact that J.L.M. was not abiding by the terms of the pre-hire agreement.

Prior decisions of this and other courts have insisted that an employer may repudiate a pre-hire agreement by conduct only so long as both the union and employees are put on notice that the contract is voided. *Operating Engineers Pension Trust v. Beck Engineering & Surveying Co.,* 746 F.2d 557, 566 (9th Cir.1984); *Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan v. Harkins Construction & Equipment Company, Inc.,* 733 F.2d 1321, 1325–26 (8th Cir.1984); *Washington Area Carpenters' Welfare Fund v. Overhead Door Co. of Metropolitan Washington,* 681 F.2d 1, 9 n. 38 (D.C.Cir.1982), *cert. denied,* 461 U.S. 926, 103 S.Ct. 2085, 77 L.Ed.2d 296 (1983); *Todd v. Jim McNeff, Inc.,* 667 F.2d 800, 804 (9th Cir.1982), *aff'd,* 461 U.S. 260, 103 S.Ct. 1753, 73 L.Ed.2d 1382 (1983). Here, the Union cannot be said to have been put on notice of J.L.M.'s intent to repudiate by conduct because neither the district court nor the majority could point to a scintilla of evidence that

the Union knew anything of the alleged conduct. Regardless how unambiguous the contract violation, if the non-repudiating party does not know of the inconsistent conduct, and there is no showing that it should have known, it is altogether unreasonable and contrary to elementary principles of contract law, or of governing human experience, to maintain that a repudiation is effected.

At most, the district court's findings indicate that J.L.M. breached the terms of the pre-hire agreement. But an employer's mere unilateral breach of contractual obligations under a pre-hire agreement does not logically nor legally suffice to work a repudiation on these facts. *Harkins Construction Co.,* 733 F.2d at 1326; *Jim McNeff,* 667 F.2d at 804.

In affirming on this record, the majority badly misconstrues the very authorities upon which it relies. In *Harkins Construction Co.,* the Eighth Circuit stated clearly that repudiation by conduct requires actual knowledge of the repudiating party's contractual violations: "[O]pen and notorious acts by one party, *known to the other,* which are inconsistent with the continuance of the contract would, in our view, constitute sufficient notice of repudiation." *Harkins Construction Co.,* 733 F.2d at 1326 (emphasis supplied). In *Jim McNeff* we chose to cite *Iron Workers, Local 103 (Higdon Construction Co.),* 216 N.L.R.B. 45; 88 L.R.R.M. 1067 (1975) to illustrate what we meant when we said that "in some circumstances noncompliance can be so bald as to put the union on notice of the employer's intent to repudiate." 667 F.2d at 804. In *Iron Workers, Local 103* noncompliance with a pre-hire agreement was so "bald" that the union picketed employer's job site for more than a month in protest. In the other cases the majority mentions in its discussion of repudiation by conduct, the unions had actual knowledge of employers' contractual violations, as well. *United Brotherhood of Carpenters v. Endicott Enterprises, Inc.,* 806 F.2d 918, 923 (9th Cir.1986) ("[I]t is undisputed that the Union had actual notice of the

open and notorious acts on the part of Endicott."); *Suburban Teamsters of Northern Illinois Health, Welfare & Pension Funds v. Callaghan Paving, Inc.*, 583 F.Supp. 105, 109–10 (N.D.Ill.1984) (employer *notified* secretary-treasurer of union local of intent to repudiate pre-hire agreement). Thus, the majority's claim that a repudiation can be effected by conduct, despite the innocent party's good faith ignorance of the very existence of that conduct, is not only unsupported by, but is also contrary to, all precedent.

By opening the door to repudiation by what are in effect subjective, uncommunicated verbal acts, the majority ignores this court's earlier admonition that employers are not free to enjoy the benefits of pre-hire agreements while misleading unions as to their undisclosed intention not to perform their obligations. *Jim McNeff*, 667 F.2d at 804. Because there is no evidence that the Union knew, or should have known, of J.L.M.'s uncommunicated breaches, the judgment of the district court should be reversed.