848 F.2d 192
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
LOCAL 673, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS,
Plaintiffs- Appellees,
v.
TATONETTI CONSTRUCTION SERVICES CORP.; and Tatonetti
Electric, Inc. and Perry Tatonetti, Defendants-Appellants.
 No. 87-3609.
 United States Court of Appeals, Sixth Circuit.
 May 19, 1988.
 
 Before MERRITT and CORNELIA G. KENNEDY, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendants, Tatonetti Construction Services Corporation, and Tatonetti Electric, Inc., appeal an order of the United States District Court for the Northern District of Ohio granting the summary judgment motion of plaintiff, Local 673 of the International Brotherhood of Electrical Workers (the union). The District Court enforced the decision of an arbitration panel which found that defendant, Tatonetti Electric, Inc., had violated the terms of the contract between it and the union. Defendants now argue that the District Court erred in upholding the arbitration award because there was no enforceable agreement between the parties at the time the union filed the grievance in question; the District Court had no jurisdiction to decide the case; defendant, Tatonetti Construction, was not the successor in interest of Tatonetti Electric, which originally signed the agreement in question; and, assuming jurisdiction, enforcement of the award violates federal law. For the following reasons, we REVERSE the decision below and REMAND to the District Court for further proceedings.
 
 I.
 
 2
 Defendant, Tatonetti Electric, an Ohio corporation owned entirely by Perry Tatonetti, was engaged in the construction business in Cleveland, Ohio. In 1980, Tatonetti Electric, after being awarded the contract to do the electrical work at a construction site within the jurisdiction of Local 673 of the International Brotherhood of Electrical Workers, signed a "letter of assent" by which it authorized the
 
 
 3
 Painesville Division Greater Cleveland Chapter, NECA [National Electrical Contractors Association] as its collective bargaining representative for all matters contained in or pertaining to the current approved inside labor agreement between the Painesville Division Greater Cleveland Chapter, NECA and Local Union 673, IBEW. This authorization, in compliance with the current approved labor agreement, shall become effective on the 29 [sic] day of July, 1980. It shall remain in effect until terminated by the undersigned employer giving written notice to the Painesville Division Greater Cleveland Chapter, NECA and to the Local Union at least one hundred fifty (150) days prior to the then current anniversary date of the aforementioned approved labor agreement.
 
 
 4
 Joint Appendix at 145. The letter of assent appears to be a standard "pre-hire agreement" by which employers in the construction industry, who employ workers on an episodic basis, contract with the union who represents the workers. Rather than negotiating an individual contract for each construction job, the contractors agree to abide by the terms of a standard collective bargaining agreement negotiated between the union and an association of contractors. Section 8(f) of the Labor Management Relations Act, 29 U.S.C. Sec. 158(f), authorizes such interim agreements in the construction industry due to the difficulties in obtaining majority status in such a transitory and project based business.
 
 
 5
 The company adhered to the terms of the current approved labor agreement while performing this job, but did not work on any further jobs within the jurisdiction of Local 673. On July 24, 1984, a new company, Tatonetti Construction Services, was incorporated with Lynette Tatonetti, the wife of Perry Tatonetti, as its President. After Tatonetti Construction was formed, Tatonetti Electric allegedly ceased to do business. Defendants claim that the new corporation was formed to take advantage of state and local laws favoring granting contracts to construction firms owned by women. Beginning in 1985, the new corporation performed two construction jobs within the jurisdiction of Local 673. It did not adhere to the terms of the pre-hire agreement while working on these jobs.
 
 
 6
 Believing that the pre-hire agreement of 1980 was enforceable against Tatonetti Construction, the union requested that the Labor-Management Arbitration Committee, which was empowered by the 1980 agreement to resolve disputes between its parties, hear its grievance. The union alleged that defendants had failed to comply with the contract's provisions to hire electricians and pay into the union's pension and health and welfare funds. After the hearing, which defendants chose not to attend, the committee, in a letter dated July 25, 1986, ruled that the pre-hire agreement was still valid and that defendant Tatonetti Electric had indeed violated the terms of the contract. The committee awarded wages and benefits to referral list union members for all hours worked at the two jobs. The union asserts that the committee must have necessarily concluded that Tatonetti Construction was the successor in interest, or "alter-ego" of Tatonetti Electric, which originally signed the 1980 letter of assent because the minutes of the meeting of the committee, which is the only award it made, is headed "Union: Grievance vs. Tatonetti Electric Inc. or Tatonetti Construction Services Inc."
 
 
 7
 On the same day the committee issued its decision, the attorney for Tatonetti Construction sent a letter to the union stating its belief that it was not bound by the letter of assent, and declaring that even if it was bound, it was then officially repudiating the agreement. On August 7, 1986, the union filed this action seeking to enforce the arbitration decision of the committee. On cross motions for summary judgment, the District Court ruled in favor of the union and the companies now appeal.
 
 II.
 
 8
 In reviewing the District Court's summary judgment in favor of the union, we apply the same standard as the trial court, namely whether there "is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). Thus, if the enforceability of the letter of assent requires resolution of any disputes over material facts, summary judgment would be inappropriate.
 
 
 9
 Defendants object to the District Court's decision on many grounds.[1] They object to the holding that the 1980 letter of assent, which was signed by Tatonetti Electric, was enforceable in 1986 against Tatonetti Construction. They argue that the agreement was intended to cover the work done on one project only and was not intended to be in force indefinitely. Further, even if the letter of assent was to remain valid indefinitely, the defendants' actions, they assert, had effectively repudiated the agreement before any work was done on the two 1985 jobs. Finally, because Tatonetti Construction is an independent corporation which never signed any letter of assent, it asserts it cannot now be bound by an agreement signed by Tatonetti Electric.
 
 
 10
 The question of whether a pre-hire agreement is enforceable is a question for the court and not for the arbitrator. In John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 546-47 (1964), the Supreme Court held that
 
 
 11
 "Under our decisions, whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." ... The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty.
 
 
 12
 Id. (citations omitted). The present dispute, then, to the extent it is about whether there exists an enforceable contract between the parties, must be decided by the courts, regardless of the findings of the arbitration committee on this issue.[2]
 
 
 13
 Defendants' first claim is that the letter of assent was intended to be a "project only" agreement which was terminated when the first job in 1980 was completed.[3] Defendants point to an affidavit of Perry Tatonetti which reflects that the agreement was so intended. However, the District Court relied on the words of the pre-hire agreement which said that it would "remain in effect until terminated by the undersigned employer giving written notice to the ... Local Union." Joint Appendix at 6. While we agree that the terms of the agreement seem clear as to its continuing nature, defendants essentially argue for an equitable reformation of the contract on the grounds that because neither party intended the agreement to extend past the initial project, the inclusion of this clause without that limitation was a mutual mistake. Whether there was a mutual mistake is a question of fact which must be decided by the District Court.[4]
 
 
 14
 The District Court also held that, as a matter of law, the only effective repudiation of the agreement is the method provided in the contract--written notification to both the contractors' association and the union. While the agreement seems to require that specific action in order for it to be repudiated, the courts have generally accepted three different ways an employer may repudiate a pre-hire agreement, without regard to the precise language of the agreement. In Carpenters Southern California Administrative Corp., v. J.L.M. Construction Co., 809 F.2d 594, 598 (9th Cir.1987), the Ninth Circuit said,
 
 
 15
 There are three distinct methods by which an employer can repudiate a pre-hire agreement: (1) by calling for a repudiation election to show that the union does not enjoy majority support; (2) by giving actual notice (written or oral) to the union; or (3) by engaging in conduct so overtly inconsistent with contractual obligations that it is sufficient to put the union on notice of the employer's intent to repudiate.[5]
 
 
 16
 Other circuits have also supported the concept that any action which is "sufficient to put the union and the employees on notice that the agreement is terminated" may constitute effective repudiation. New Mexico Dist. Council of Carpenters and Joiners of America v. Jordan & Nobles Constr. Co., 802 F.2d 1253, 1255-56 (10th Cir.1986). Although the terms of the instant pre-hire agreement make it more difficult for the defendants to show that their subsequent actions effectively barred the 1985 enforcement of this agreement, we are not convinced that the terms of the agreement preclude, as a matter of law, a finding that defendants' actions sufficiently put the union on notice that it repudiated the agreement. The defendants' failure to follow the terms of the contract, the union's alleged knowledge of that failure and the long period of time when the defendants had no business dealings with the union, although no means conclusive on the issue, they are enough to warrant further factual investigation. The question of "[w]hether an employer's conduct is sufficiently overt and inconsistent with the terms of a pre-hire agreement to put a union on notice of an employer's repudiation involves an essentially factual inquiry." Carpenters, 809 F.2d at 597. Whereas here, the terms of the agreement permit the company to terminate it unilaterally, we see no policy reason to prohibit it from doing so by sufficiently clear conduct.
 
 
 17
 The District Court made no independent determination as to whether Tatonetti Construction was the successor in interest, or "alter-ego" of Tatonetti Electric. Rather, it deferred to the arbitration committee. Without making factual findings on its own, the District Court reviewed the evidence before the committee and concluded that
 
 
 18
 [o]n these facts, the committee could reasonably conclude that, since Tatonetti had stated that Tatonetti Electric was the former name of Tatonetti Construction and that both were engaged in electrical subcontracting work, the two companies were not separate corporations and that Tatonetti Construction was obligated to Local 673 under the letter of assent signed by Tatonetti Electric.
 
 
 19
 Joint Appendix at 149-50.
 
 
 20
 As we noted above, in John Wiley & Sons, 376 U.S. 543 (1964), the Supreme Court specifically held that the questions surrounding whether the parties were compelled to arbitrate was an issue for the courts and not for arbitrator. The facts of John Wiley & Sons make clear that the issue of successor in interest is outside the scope of the arbitrator's jurisdiction. In that case the employer argued that it was never a party to the collective bargaining agreement because after Wiley & Sons entered into the agreement, it merged with another company, and the resulting corporation never entered into any agreement with the union. The Supreme Court held that the question of whether the new corporation was a successor in interest was for the courts, and not the arbitrator.
 
 
 21
 We agree with defendants, therefore, that the District Court erred in relying on the arbitration committee's decision as to whether Tatonetti Construction was liable under an agreement signed by Tatonetti Electric. The District Court was required to make its own factual findings and its own application of successorship law.
 
 
 22
 The judgment of the District Court is REVERSED and the action is REMANDED to the District Court to determine whether a contract for arbitration existed in 1985 and if so, whether Tatonetti Construction is the successor in interest or alter ego of Tatonetti Electric.
 
 
 
 [1]
 The defendants question the jurisdiction of the District Court to hear the case. We find no merit in this contention. We agree with the Regional Director of the National Labor Relations Board who refused to hear the dispute because it considered these issues to be "clearly matters which can be addressed in the District Court." Joint Appendix at 248
 
 
 [2]
 Of course, once the courts have determined that an enforceable contract exists, and that it allows for arbitration, courts have "no business weighing the merits of the grievance." International Union United Auto., Aerospace and Agric. Implement Workers of America, UAW v. Lester Eng'g. Co., 718 F.2d 818, 823 (6th Cir.1983)
 
 
 [3]
 Despite defendants' lengthy argument, the Regional Director's conclusion in another case that the agreement was intended to be on a "project only" basis has no effect on this decision. The parties in this case are not the same as the prior case and it would be manifestly unjust to hold the union bound by a decision that it had no opportunity to litigate
 
 
 [4]
 But see, Carpenters Southern California Admin. Corp. v. J.L.M. Constr. Co., 809 F.2d 594, 596 n. 2 (9th Cir.1987) (collective bargaining agreements may not be modified by oral agreements between employers and unions)
 
 
 [5]
 Clearly the first method, an election, could terminate the pre-hire agreement regardless of the terms of the agreement